ACCEPTED
15-25-00086-Cv
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
8/15/2025 3:41 PM
CHRISTOPHER A. PRINE
CLERK

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
8/15/2025 3:41:01 PM
CHRISTOPHER A. PRINE
Clerk

No. 15-25-00086-CV

**IN THE COURT OF APPEALS**
**FOR THE FIFTEENTH DISTRICT OF TEXAS**
**AT AUSTIN, TEXAS**

_____

CITY OF GRAND PRAIRIE, CITY OF ALEDO, CITY OF ANGLETON, CITY OF AUBREY, CITY OF BULVERDE, CITY OF CLYDE, CITY OF COLLEGE STATION, CITY OF CRANDALL, CITY OF DENISON, CITY OF DENTON, CITY OF EDCOUCH, CITY OF ELSA, CITY OF FATE, CITY OF HUTTO, CITY OF KAUFMAN, CITY OF LA VILLA, CITY OF LOCKHART, CITY OF MCKINNEY, CITY OF NAVASOTA, CITY OF PARKER, CITY OF VAN ALSTYNE, AND AUBREY MUNICIPAL DEVELOPMENT DISTRICT

*Appellants – Plaintiffs*

CITY OF ANNA, CITY OF BONHAM, CITY OF BROWNSVILE, AND CITY OF CIBOLO

*Appellants – Intervenor Plaintiffs*

**2020 LONG TAIL TRAIL INVESTMENTS, LLC**
*Appellant – Intervenor Defendant*

v.

THE STATE OF TEXAS, ATTORNEY GENERAL KENNETH PAXTON, IN HIS OFFICIAL CAPACITY, ACTING TEXAS COMPTROLLER OF PUBLIC ACCOUNTS KELLY HANCOCK, IN HIS OFFICIAL CAPACITY, AND THE OFFICE OF THE TEXAS COMPTROLLER OF PUBLIC ACCOUNTS

*Appellees – Defendants*

_____

**BRIEF OF APPELLANT – INTERVENOR PLAINTIFF CITY OF ANNA**

_____

**ORAL ARGUMENT REQUESTED**

**Wolfe, Tidwell & McCoy, LLP**
David Overcash
David.overcash@wtmlaw.net
SBN 24075516
Clark McCoy
2591 Dallas Parkway, Suite 300
Frisco, Texas 75034
972.712.3530 telephone
972.712.3540 facsimile

i

# IDENTITY OF PARTIES AND COUNSEL

**Appellant:**    **City of Anna, Texas**
*Plaintiff-Intervenor in court below*

**Appellant's Counsel:**    **Wolfe, Tidwell & McCoy, LLP**

David Overcash
David.overcash@wtmlaw.net
SBN 24075516
Clark McCoy
SBN 90001803
2591 Dallas Parkway, Suite 300
Frisco, Texas 75034
972.712.3530 telephone
972.712.3540 facsimile

**Other Appellants:**    **City of Grand Prairie, City of Aledo, City of Angleton, City of Aubrey, City of Bulverde, City of Clyde, City of College Station, City of Crandall, City of Denison, City of Denton, City of Edcouch, City of Elsa, City of Fate, City of Hutto, City of Kaufman, City of La Villa, City of Lockhart, City of McKinney, City of Navasota, City of Parker, City of Van Alstyne, Aubrey Municipal Development District**
*Original Plaintiffs in court below*

**Other Appellants' Counsel: Messer, Fort, PLLC**

Timothy A. Dunn
William Andrew Messer
andy@txmunicipallaw.com
Bradford E. Bullock
Arturo D. Rodriguez
6371 Preston Rd Ste 200
Frisco, Texas 75034
972.668.6400 telephone
972.668.6414 facsimile

**Additional Appellants:**   **City of Brownsville, City of Cibolo**
*Plaintiff-intervenors in court below, joined in original plaintiff filings on appeal*

**Counsel: Messer, Fort, PLLC**

Timothy A. Dunn
William Andrew Messer
andy@txmunicipallaw.com
Bradford E. Bullock
Arturo D. Rodriguez
6371 Preston Rd Ste 200
Frisco, Texas 75034
972.668.6400 telephone
972.668.6414 facsimile

*<in court below, also appeared for Brownsville the following attorneys>*

***Staff Counsel***, being:
Lena Chaisson-Munoz
Jennifer Avendano
Guillermo S. "Will" Trevino

*<in court below, also appeared for Cibolo the following attorneys>*

**Hyde Kelley LLP**
George E. Hyde
Matthew L. Weston

**2020 Long Tail Trail Investments, LLC**
*Defendant-intervenor in court below*

**Counsel: Lehotsky Keller Cohn LLP**

William T. Thompson
Todd Disher
Joshua P. Morrow

408 W. 11th St.
Austin, TX 78701
will@lkcfirm.com
512.693.8350 telephone

**City of Bonham, Texas**
*Plaintiff-Intervenor in court below*

**Counsel: Wolfe, Tidwell & McCoy, LLP**
*Filing separately from City of Anna*

David Overcash
David.overcash@wtmlaw.net
SBN 24075516
Clark McCoy
SBN 90001803
2591 Dallas Parkway, Suite 300
Frisco, Texas 75034
972.712.3530 telephone
972.712.3540 facsimile

| | |
|---|---|
| Appellees: | **State of Texas, Attorney General Kenneth Paxton (in his official capacity), Acting Texas Comptroller of Public Accounts Kelly Hancock (in his official capacity)[1], and the Office of the Texas Comptroller of Public Accounts** |
| Appellees' Counsel: | **Office of the Texas Attorney General** |

Cole P. Wilson
Cole.wilson@oag.texas.gov
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
512-936-1309 telephone
512-320-0667 facsimile

---

[1] As replacing former Texas Comptroller Glenn Hegar.

iv

# Table of Contents

IDENTITY OF PARTIES AND COUNSEL ................................................................. ii

INDEX OF AUTHORITIES ............................................................................. vii

STATEMENT OF THE CASE ................................................................................1

STATEMENT REGARDING ORAL ARGUMENT ........................................3

ISSUES PRESENTED ...........................................................................................5

STATEMENT OF FACTS .....................................................................................5

    1. Adoption by reference of the SB 2038 legislative history, procedural history, and content applicable to all Texas municipalities in co-Appellant filings. ....................................................................................5

    2. Distinctions in Anna's Posture as Compared to Other Appellants. .......6

    3. State Agency Reliance on SB 2038 Injures the City of Anna. .............8

    4. County Agency Reliance on SB 2038 Injures City of Anna. ..............12

SUMMARY OF ARGUMENT ...........................................................................13

ARGUMENT .......................................................................................................15

    Standard of Review ......................................................................................15

    Issue 1: *Order On State's Plea Was Overbroad With Respect To Separate Pleadings Of Anna* .................................................................17

        A. Content and Substance of State's Plea to Jurisdiction was Limited to Pleadings of Other Plaintiffs. ...................................19

        B. Anna's Unique Claims Were Never Challenged by State's Plea. .............................................................................................21

        C. April 14 Order Should Not Have Closed Entire Case. ..............23

    Issue 2: *Remand is warranted for consideration of pending motions, pleading amendments, and joinder of additional State defendants to forestall ongoing injuries injuring Texas municipalities via SB 2038.* ........................................................24

        A. Pending motions in court were implicitly denied, or deemed overruled by passage of time. ..............................................24

        B. Anna is entitled to amend pleadings, and potentially join additional necessary parties, before closure of the case. .........26

Issue 3+: *Anna incorporates by reference the Issues Presented by co-appellants City of Grand Prairie, et al., as to all those matters applicable to all Texas municipalities.* ...................................... 29

**PRAYER** ........................................................................... 33

**CERTIFICATE OF SERVICE** ............................................ 35

**CERTIFICATE OF COMPLIANCE** ................................... 35

**APPENDIX** ...................................................................... 36

# INDEX OF AUTHORITIES

**Cases**

*Abbott v. City of El Paso*, 677 S.W.3d 800 (Tex. 2023) *vacated on other grounds by* 677 S.W.3d 914 (Tex. 2023) ........................................ 19, 28

*Ball v. Cundiff*, 127 S.W.2d 502 (Tex. Civ. App.—Fort Worth 1939, writ dism'd judgm't cor.) ...................................................................... 27

*Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547 (Tex. 2000) ..................... 17

*Brown Cracker & Candy Co. v. City of Dallas*, 137 S.W. 342 (Tex. 1911) 19, 28

*City of Floresville v. Nissen*, 654 S.W.3d 11 (Tex. App.—San Antonio 2022, pet. denied) ................................................................................ 22

*City of New Braunfels v. Stop the Ordinances Please, et al.*, 2013 WL 692446 (Tex. App.—Austin, Feb. 21, 2023, no pet.) ............................ 21

*County of Cameron v. Brown*, 80 S.W.3d 549 (Tex. 2002) .................. 19, 29

*Dohlen v. City of San Antonio*, 643 S.W.3d 387 (Tex. 2022) ............... 18, 19

*Elliott v. City of College Station*, ___ S.W.3d ___, 2025 WL 1350002 (Tex. May 9, 2025) ................................................................................ 22

*Gulf Coast Waste Disposal Auth. v. Four Seasons Equip., Inc.*, 321 S.W.3d 168 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ................................. 17

*Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468 (Tex. 2012). ..... 16

*Lujan v. Defenders of Wildlife*, 504 US. 555 (1992) ................................ 28

*Mattox v. County Comm'rs Court*, 389 S.W.3d 464 (Tex. App.—Houston [14th Dist.] 2012, pet. denied)...............................................................18

*Mi Familia Vota v. Ogg*, 105 F.4th 313 (5th Cir. 2024) ...............................33

*Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217 (Tex. 2004)…16, 17

*Tex. Prudential Ins. Co. v. Dillard*, 307 S.W.2d 242 (Tex. 1957) ..............18

*Texas A&M Univ. Sys. v. Koseoglu,* 167 S.W.3d 374 (Tex. App.—Waco 2005, *aff'd in part, rev'd in part* by 233 S.W.3d 835) .............................28

*Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835 (Tex. 2007) ...... 19, 28

*Thomas v. Long*, 207 S.W.3d 334 (Tex. 2006)..........................................17

*West End API Ltd. v. Rothplez*, 732 S.W.2d 371 (Tex. App.—Dallas, writ ref'd n.r.e.) ...............................................................................................18

**Statutes**

UNITED STATES CONSTITUTION, Art. 1, Sec. 10, cl. 1.; TEXAS CONSTITUTION, Art. 1, Sec. 16..............................................................................................31

Tex. Civ. Prac. & Rem. Code § 37.006 ....................................................25

Tex. Gov't Code § 311.032(c)....................................................................23

Tex. Loc. Gov't § 42.023...........................................................................9, 19

Tex. Loc. Gov't Code § 42.105(c) .............................................................22

Tex. Loc. Gov't Code § 42.105(d) .............................................................13

Tex. Loc. Gov't Code § 42.155(a) ..............................................22

Tex. Loc. Gov't Code § 42.155(b) ..............................................13

Tex. R. App. P. 38.7 ...............................................................30

Tex. R. Civ. P. 329b(c)............................................................24

Tex. R. Civ. P. 33.1(b) ...........................................................25

Texas Water Code § 54.016(e)...............................................9, 11

## STATEMENT OF THE CASE

**Nature of the case.** This is an appeal from grant of a plea to the jurisdiction by the State of Texas, and certain officials and offices thereof, asserting immunity from suit and liability against and action for declaratory judgment and other relief from unconstitutional statutes created by SB 2038.

**Course of proceedings.** The suit's original plaintiffs, City of Grand Prairie *et al*., filed their Original Petition seeking relief by declaratory judgment against the State of Texas in the Travis County district court.[2] At various later dates, they were joined by plaintiff-intervenors City of Anna, City of Bonham, City of Brownsville, and City of Cibolo.[3] The State of Texas timely answered and filed a plea to the jurisdiction on various grounds.[4] A landowner who had submitted a petition to plaintiff City of Denton, 2020 Long Tail Trail Investments, LLC, ("LTTI") also intervened in the suit as a defendant, seeking declaratory judgment that SB 2038 was constitutional

---

[2] C.R. at 3-62 (Vol. 1, p. 3-62) (Plaintiff's Original Petition for Declaratory Relief, filed Oct. 25, 2023).

[3] *See* C.R. at 124-146 (Vol. 1, p. 124-146)(City of Anna's Original Petition in Intervention, filed January 12, 2024).

[4] C.R. at 147-151 (Vol. 1, p. 147-151)(Defendant's Answer and Affirmative Defenses to City of Anna's Original Petition in Intervention, filed February 5, 2024) and C.R. 233-255 (Vol. 2, p. 59-81)(The State of Texas's Plea to the Jurisdiction, filed Apr. 22, 2024)(as later amended, "State's Plea" herein).

1

and enforceable.[5] Plaintiffs amended their pleadings to join as defendants the Texas Attorney General and Texas Comptroller of Public Accounts (in their official capacities only), along with their offices.[6] In addition to the State's Plea being amended to include those defendants, answers were filed on behalf of those parties, and the State moved to strike the intervention of LTTI.[7] Various parties filed motions for summary judgment, believing that the merits of SB 2038 were ripe for decision without lengthy discovery as not involving any disputed issues of fact. Plaintiff-intervenors City of Anna and City of Bonham filed motions seeking to join additional parties and make accompanying amendments to their petitions.[8]

---

[5]  C.R. at 263-276 (Vol. 2, p. 89-102)(Plea in Intervention of 2020 Long Tail Trail Investments, LLC, filed May 1, 2024).

[6]  *See., e.g,* C.R. at 6123-6186 (Vol. 24, p. 3-67)("Plaintiffs' Fourth Amended Original Petition for Declaratory Relief", filed Oct. 10, 2024, encompassing Grand Prairie and other original plaintiffs); C.R. 8236-8332 (Vol. 33, p. 1-99)("City of Anna's Second Amended Petition in Intervention", filed December 23, 2024); and C.R. 8446-8494 (Vol. 35, p. 3-52)("City of Bonham's First Amended Petition in Intervention", filed Dec. 23, 2024).

[7]  C.R. 6212-6218 (Vol. 25, p. 91-98)("Defendants' Answer and Affirmative Defenses", filed Nov. 15, 2024); C.R. 8624-8652 (Vol. 36, p. 67-95)("The State Defendants' Amended Plea to the Jurisdiction", filed Jan. 2, 2025); and C.R. 2404-2497 (Vol. 12, p. 101-194)(Defendant's Verified Plea in Abatement and Motion to Strike 2020 Long Tail Trail Investments, LLC's Original Petition in Intervention, filed May 24, 2024).

[8]  C.R. 8209-8233 (Vol. 32, p. 143-167)("Joint Motion for Leave to Amend Petition to Join Additional Parties by City of Bonham and City of Anna", filed Dec. 23, 2024).

**Trial court disposition.** Multiple hearings were held to consider the merits of the State's Plea.[9] Ultimately, the trial court granted the State's motion to eject LTTI from the case and granted the State's Plea as to all named defendant parties, denied those motions for summary judgment set for simultaneous hearing as moot, and closed the case.[10] All parties seeking a ruling on the merits of SB 2038 elected to pursue this appeal.[11]

## STATEMENT REGARDING ORAL ARGUMENT

Appellant believes that the decisional process of the Court of Appeals will be aided by oral argument, as this appeal deals with a variety of issues as to whether the trial court erred in finding that the State-affiliated parties-defendant were entirely immune from suit based on a constitutionality challenge to SB 2038. Appellant-affiliated parties contend that suits of this nature must be permitted where the Texas Legislature adopts laws which are in conflict with the Texas Constitution but they are ostensibly required to observe, especially where, as here, the Legislature deliberately omits any

---

[9] Hearings were conducted on jurisdictional pleas at issue on Jan. 8 and Jan. 16, 2025. *See, e.g.* C.R. 8653 (State's notice of hearing for Jan. 8).

[10] C.R. at 9081-9082 (Vol. 40, p. 60-61)("Order on Pending Motions", filed Apr. 14, 2025)("Apr. 14 Order" herein).

[11] *See, e.g.,* C.R. 9134-9138 (Vol. 41, p. 113-117)("Plaintiff-Intervenor City of Anna's Notice of Appeal", filed May 8, 2025). Also in the docket of the trial court was "City of Anna's TRCP 329b Motion to Modify Judgment and Alternative Motion for New Trial and Other Relief." C.R. 9153-9198 (Vol. 41, p. 3-48)(filed May 14, 2025)("Anna 329b Motion").

actual assignments of power-to-enforce in favor of a magic incantation "by operation of law." Separate and apart from those issues, this appeal also involves the premature closure of the case in the court below while motions relating to joinder of necessary parties remained pending. As this appeal involves issues central to municipal governing bodies identifying their territory, is contributing to conflicting and confusing maps being adopted by different agencies, and causing unjustifiable actions by Texas governmental agencies, apparently in unfounded reliance or improper interpretation of SB 2038 provisions. Accordingly, Appellant requests oral argument.

## ISSUES PRESENTED

**Issue 1:** **Trial court erred by construing State's Plea as applicable to the entirety of Anna's pleadings and issued an overbroad ruling.**

**Issue 2:** **Remand is warranted for consideration of pending motions, pleading amendments, and joinder of additional State defendants to forestall ongoing injuries to Texas municipalities via SB 2038.**

**Issue 3(+):** *Anna incorporates by reference the Issues Presented by co-appellants City of Grand Prairie, et al., as to matters in their brief applicable to all Texas municipalities.*

## STATEMENT OF FACTS

**1**. **Adoption by reference of the SB 2038 legislative history[12], procedural history, and content applicable to all Texas municipalities in co-Appellant filings.**

In an effort to reduce repetition as between filings by municipalities, the City of Anna ("Anna") focuses its brief on the facts distinguishing its position in this suit from other appellants. In accordance with Texas Rule of Appellate Procedure ("TRAP") 9.7, Anna adopts by reference, and incorporates herein as if set forth in full, all of that Statement of Facts presented in the live brief

---

[12] While this suit was pending, the 89th Legislature adopted a bill which amended various provisions first created by SB 2038. However, it does not become effective until September 1, 2025 (after the due date for this brief), and would not have any effect on petitions submitted to Anna prior to that date—those would be controlled solely by the original statute. In addition, the new changes do not modify many of the clauses giving rise to the instant challenges to the original statutory language, which is challenged as being void *ab initio*—if Anna or other cities prevail in this suit, there might be nothing to amend. As such, the new legislation (HB 2512) should not affect the handling of this appeal.

of appellants City of Grand Prairie, *et. al.*, save and except for those facts which are specific to a different Texas municipality, and except as amended or modified by the paragraphs below.[13]

## 2. Distinctions in Anna's Posture as Compared to Other Appellants.

### A. Anna's Independent Pleadings

At the time of the hearings on the State's Plea, most of the plaintiff municipalities were joined in one pleading led by the City of Grand Prairie; their live pleading as of the Apr. 14 Order was their Fourth Amended Petition (collectively, "Grand Prairie Group" or "GP Group").[14] **Anna was one of several plaintiff-intervenors who have separate legal counsel and filed independent pleadings from the GP Group.**[15]

Anna's live pleading featured claims with substantial overlap to those made by the GP Group (by either replication or express incorporation), but

---

[13]  *See* "Brief of Appellant Cities" filed by City of Grand Prairie, *et al.* in this cause (submission deadline Aug. 15, 2025). Anna does not adopt any content specific to the Aubrey Municipal Development District and takes no position on any factual matters specific to any other municipality.

[14]  C.R. 6123-6186 (Vol. 24, p. 3-66, not inclusive of exhibits); as supplemented by C.R. 8767-8772 (Vol. 37, p. 110-115).

[15]  *See* C.R. at 124-146 (Vol. 1, p. 124-146)(City of Anna's Original Petition in Intervention, filed January 12, 2024); C.R. 8236-8332 (Vol. 33, p. 1-99) "City of Anna's Second Amended Petition in Intervention", or "2nd Am. Pet.", filed December 23, 2024). The latter was Anna's live pleading for purposes of this appeal.

Anna did <u>not</u> adopt anyone else's *pleadings* as its own.[16] Further, Anna's pleadings included various claims which were not advanced by the GP Group, distinctions in authority or argument with respect to other parties' claims, and factual context that was not raised or addressed by the GP Group's live pleading.[17]

B. **<u>Anna's Pending Motions When Case Closed Below</u>**.

Anna attempted to forestall premature disposal of its claims—both on the merits of the State's Plea, and with respect to the overly broad order of April 14—through motions which never received any ruling in the court below. Specifically, Anna had pending in the court's docket:

1) "Joint Motion for Leave to Amend Petition to Join Additional Parties by City of Bonham and City of Anna"[18];

2) "City of Anna's TRCP 329b Motion to Modify Judgment and Alternative Motion for New Trial and Other Relief."[19]

---

[16] *See generally id*; *see also* C.R.8245 at ¶ 24 (limiting Anna's incorporation to "authority and legal argument" in Section VI of the 4th Am. Petition, "with refinements and additions noted [by Anna's 2nd Am. Pet.]"); and C.R. 8783-84 at ¶ 2 (City of Anna's and City of Bonham's Joint Response to Defendants' Pleas to the Jurisdiction)(again providing for limited incorporation).

[17] *See* Issue #2 below.

[18] C.R. 8209-8233 (Vol. 32, p. 143-167)(filed Dec. 23, 2024).

[19] C.R. 9153-9198 (Vol. 41, p. 3-48)(filed May 14, 2025)("Anna 329b Motion").

The State's Plea limited its discussion of plaintiffs' pleadings to the specific contents of the GP Group's live pleading (their Fourth Amended Petition).[20] Its internal plaintiff-pleading-quotations were exclusively lifted from the GP Group petition, and various arguments and claims raised by Anna were not substantively discussed or adequately briefed by the State for trial court determination.[21]

### 3. State Agency Reliance on SB 2038 Injures the City of Anna.

Anna discovered additional facts since the briefing on the State's Plea was submitted in the court below, and hearings held on same. These matters were therefore not fully considered in the trial court's assessment of jurisdictional issues, but were raised by Anna in a timely motion to modify, correct, or reform the Apr. 14 Order.[22] Anna incorporates these factual matters into this brief by reference as if set forth in full, and would summarize the relevant timeline as follows:

   a. July 11, 2024: Anna receives a request from local landowner GRBK Edgewood, LLC ("GRBK") seeking consent to creation of a municipal

---

[20]  *See generally* C.R. 8624-8652 (Vol. 36, p. 67-95). The word "Anna" does not appear therein. Taking the most generous view of this filing, Anna might be considered as part of the undefined term "the Cities"—which would also include Brownsville, Cibolo, and Bonham, also with pleadings independent from the GP Group, but there is no discussion of Anna's unique facts or claims. *See id.*

[21]  *See generally id.*; *see also* Issue 2, Sec. B, *infra*.

[22]  *See* Anna 329b Motion at p. 3-4 and Exhibit 1 ((C.R. 9155-9156; 9159-9194) (Vol. 41, p. 5-6; 9-44).

utility district to include a portion of Anna's ETJ within its total territory of 405.654 acres.

b. <u>Sept. 24, 2024</u>: The City Council of the City of Anna adopts Resolution 2024-9-1680 in response GRBK's request for Anna's consent.[23] In accordance with Texas Water Code § 54.016(e) and other Texas law, Anna's consent to GRBK's request included conditions (right to inspect facilities being constructed, restrictions on the terms and provisions of bonds and notes issued by the district, and the purposes for which such bonds may be issued.[24]

c. <u>Dec. 4, 2024</u>: Texas Commission on Environmental Quality ("TCEQ") issues a "Notice of District Petition" from GRBK seeking to create the Seven Springs Municipal Utility District ("SSMUD").[25] The "vicinity map" associated with the GRBK petition shows land within the Anna ETJ as part of the proposed SSMUD territory.[26] The GRBK petition notice includes, *as declarative factual statement*, the assertion that "**none of the land within the proposed District is within the corporate limits or extraterritorial jurisdiction of any city.**"[27] As of this filing, Anna has never taken any action providing the governing body's consent to the reduction of its ETJ as relates to this property.[28] This TCEQ publication appears to reflect blind reliance by that state agency on false assertions, or fraudulent claims, by petitioner GRBK

---

[23] C.R. at 9185-9193 (Vol. 41, p. 35-43)(Res. 2024-9-1680 and exhibits). The GRBK property is depicted in the Collin County Appraisal District ("CCAD") GIS map in C.R. 9194 (Vol. 41, p. 44). GRBK's parcel is the central irregular polygon (CCAD Property ID# 2852956). The portions within Anna ETJ are colored green; the portions colored amber show ETJ of the City of Weston.

[24] *See id.* at Exhibit B, C.R. 9191-9193 (Vol. 41, p. 41-43).

[25] *See* C.R. at 9162-9164 (Vol. 41, p. 12-14).

[26] *Compare* C.R. 9164 (Vol. 41, p. 14)(SSMUD "General Vicinity Map") *with* C.R. 9194 (Vol. 41, p. 44)(GIS depiction of GRBK territory with Anna and Weston ETJs shaded green and amber, respectively).

[27] *Id.* at 9162 (Vol. 41, p. 12).

[28] *See* C.R. at 9164; *also see generally* Tex. Loc. Gov't Code 42.023.

9

regarding the territory covered by the petition, or some manner of unilateral, un-noticed action by TCEQ employees to change the boundaries of Anna's ETJ.

d. Dec. 13, 2024: Texas Secretary of State publishes online regarding a petition from GRBK Edgewood, LLC, seeking to create a new municipal utility district which would include territory in Anna's ETJ. The City of Anna was not supplied with any specific notice of this proceeding. The online notice promulgated by TCEQ repeats the declaration that "**none of the land within the proposed District is within the corporate limits or extraterritorial jurisdiction of any city**."[29]

e. Feb. 21, 2025: TCEQ issues an order granting the GRBK petition to create the SSMUD.[30] The SSMUD Creation Order includes exhibits describing its subject area as a precise match to the Anna resolution described above.[31] Within Exhibit B of the SSMUD Creation Order is TCEQ Technical Memorandum dated February 6, 2025, which includes multiple assertions by TCEQ staff that the land at issue is outside of any ETJ.[32] Although said memorandum shows that the petitioner was required to provide certification of ownership from the appraisal district, it is devoid of any notation suggesting any type of inquiry into the ETJ status of the territory beyond reference to the

---

[29] *See* "Notice of District Petition TCEQ Internal Control No. D-10292024-053", available at https://www.sos.state.tx.us/texreg/archive/December132024/In%20Addition/In%20Addition.html#51 (last visited August 8, 2025)(notice issued Dec. 4, 2024).

[30] C.R. at 9165-9184 (Vol. 41, p. 15-34)("SSMUD Creation Order").

[31] *Compare* C.R. 9167-9174 (Vol. 41, p. 17-24, being Exh. A. to the SSMUD Creation Order and providing metes & bounds description of two parcels totaling 405.654 acres) *and* C.R. 9175 (Vol. 41, p. 25, being part of Exh. B to SSMUD Creation Order, stating the "proposed District contains two tracts of land totaling 405.654 acres") *with* C.R. 38-40 (legal description of GRBK territory totaling 405.654 acres from Res. 2024-9-1680).

[32] *See* C.R. at 9175-76 (Vol. 41, p. 25-26).

10

petitioner's application.[33] **In apparent reliance on the unilateral assertions of GRBK with respect to the ETJ status of the territory covered by its petition, in a section relating to "City Consent," the TCEQ Technical Memorandum declares "requirements of Texas Local Government Code Section 42.042 and [Texas Water Code] Section 54.016 are not applicable."[34]**

f. April 1, 2025: Anna receives correspondence from Collin County Engineering seeking information regarding whether "the city officially approved the removal of the portion of this parcel from the Anna ETJ[.]"[35] This constitutes the first hint to Anna that the SSMUD application included territory still within Anna ETJ, and leading to the discovery that TCEQ had unlawfully failed to include the conditions of municipal consent required by Texas Water Code § 54.016(e) when it approved the creation of SSMUD.[36]

g. April 3, 2025: The trial court issues a letter announcing the substance of its rulings on the State's Plea and related matters.[37]

---

[33] *See generally* Exhibit B to the SSMUD Creation Order (C.R. 9175-9184 (Vol 41 at p. 25-34)).

[34] *Id.* at 9176 (Vol. 41, p. 26). Anna also notes that the memorandum section on "Notice Requirements" does not indicate that municipalities which have ETJ included in the petitioner area did not receive any individualized notice or opportunity to be heard. *Id.* at 9177. Further, TCEQ notes that the opportunity for "the public" (presumably including concerned municipalities such as Anna) to request a contested case hearing expired on January 21, 2025—months prior to Anna's discovery of GRBK presenting false information regarding ETJ status in its SSMUD creation petition. *See* C.R. at 9177 (Vol. 41, p. 27).

[35] Anna is still trying to determine the first date it became aware of the TCEQ's action to ignore the ETJ status of the GRBK territory. *Cf.* Appx. 3 (C.R. 9160, 9162, 9166, 9175, 9176)(TCEQ document references).

[36] *See generally* C.R. at 9165-9166 (main body of TCEQ order, which does not incorporate any of Anna's conditions to consent).

[37] C.R. 9079-80 (Vol. 40, p. 58-59)(Letter from Hon. Maria Cantú Hexsel to counsel for all parties, dated April 3, 2025).

**4. County Agency Reliance on SB 2038 Injures City of Anna.**

Anna also discovered additional facts relating to actions by Collin County after the trial court hearing on the State's Plea. These matters were therefore not fully considered in the assessment of jurisdictional issues. The relevant timeline is summarized as follows:

a. March 24, 2025: In conjunction with review of a plat submitted by GRBK, Collin County Engineering sends email to GRBK representatives stating: "**This parcel is showing to be partially in** Weston and **Anna ETJ**", presumably per county maps.[38]

b. April 1, 2025: Anna receives correspondence from Collin County Engineering seeking information regarding whether "the city officially approved the removal of the portion of this parcel from the Anna ETJ[.]"[39] Anna was forwarded copies of earlier correspondence to Collin County staff from agents of GRBK, which included statements **like "the TCEQ's position is that the property is not located within the ETJ of any city."**[40]

c. April 1, 2025: Collin County staff notifies Anna staff of the following: "If **the county deems** that the removal petition was submittal per the state law (as we understand it), we have been instructed (by county administration and [county commissioner's] court) to officially remove them from the ETJ on our map."[41]

Anna was still collecting information and assessing the actions of TCEQ and Collin County at the time the trial court's final order was signed

---

[38]  Appx. at p. 49 (emphasis added).

[39]  Anna has not yet been able to pinpoint the earliest date it became aware of the TCEQ's action to ignore the ETJ status of the GRBK territory.

[40] *See* Appx. at p. 48.

[41] *See* Appx. at p. 46 (emphasis added).

April 14, 2025. As such, it was not feasible to have these matters fully considered by the district judge prior to the ruling on the State's Plea and this appeal which followed.

## SUMMARY OF ARGUMENT

Many of the arguments in this lawsuit boil down to whether the Texas Legislature may use the clause "by operation of law" as a magic spell which prevents any meaningful judicial review of whether a statute containing those words conforms to the Texas Constitution.[42] The State Defendants achieved dismissal on the basis of a plea to the jurisdiction which, in essence, says that this clause has miraculous and unlimited power to wreak havoc in the governance of municipalities, destroy contractual exchanges of consideration, and nullify other statutes in a manner which prevents timely issuance of any declaratory judgment: it is the *failure* of the statute to provide enforcement authority to anyone at all which, per the State, makes it impossible to challenge SB 2038 in this suit. The State Defendants therefore substituted prevarication and waffling whether or not State agency or officials

---

[42] *See* Tex. Loc. Gov't Code §§ 42.105(d) and 42.155(b) (both newly created by SB 2038 and containing phrase "released by operation of law.")

had *yet* taken actions to enforce SB 2038, without ever denying that per the statute, *any* of them can (and some have been) enforcing its provisions.[43]

In addition to the grounds for appeal that are common to all of the municipal plaintiffs and intervenors,[44] the trial court erred in issuing an ambiguous order on the State's Plea and closing the case without resolution of other pending matters specific to plaintiff-intervenor City of Anna.

First, despite a timely motion by Anna to reform or modify the judgment, the trial court effectively and erroneously disposed of claims not directly contested by the State's Plea, without any known grounds.

Second, presuming *arguendo* that the trial court's determination regarding jurisdiction over the State Defendants was correct on the live pleadings, it was manifest error to close the case without first allowing Anna and other plaintiffs an opportunity to amend to resolve whatever jurisdictional defect might have been identified.

---

[43] *See, e.g.,* C.R. 9153-9198 ("City of Anna's TRCP 329b Motion to Modify Judgment and Alternative Motion for New Trial and Other Relief"). Within the City shows that prior to April 14, 2025, the TCEQ had been promulgating documents, conducting hearings, and creating new utility districts affecting territory within municipal ETJ in a manner which could only be justified through (unspoken) reliance on SB 2038. *See, e.g., id.* at 9165-66 (TCEQ order of Feb. 21, 2025, declaring land within MUD creation order to be outside of any municipal ETJ).

[44] *See* Issue 3+ content below.

Third, closure of the case was improper in light of Anna's pending motions for leave to join additional parties and modification of the Apr. 14 Order (or alternative relief such as a new trial) under Texas Rule of Civil Procedure ("TRCP") 329b, particularly after newly discovered information shows that the Texas Commission of Environmental Quality (or rogue officials acting under color of that agency's authority) have been *de facto* enforcing SB 2038's provisions without statutory authority—including altering maps, issuing official documents making erroneous statements about property locations, and injuring cities such as Anna *without any effective notice or opportunity to be heard*.

Each of these reasons would independently warrant reversal or abrogation of the Apr. 14 Order, and reversal in favor of Anna and/or remand to the trial court for further proceedings.

**ARGUMENT**

As a preliminary matter, the central issues of the instant appeal do not require deep analysis of *if* the Texas Legislature has authority over how municipality's extraterritorial jurisdiction is determined or governed. Anna recognizes that since ETJ was a creation of statute in the first instance, the Legislature enjoys great power to change the laws it has adopted. However, all statutes are subject to constitutional limitations and requisites with respect

15

to *how* that legislative power is utilized, and ultimately it may be that the Legislature must modify some of the particulars of legislation such as SB 2038 in order to achieve lawful objectives of the original statute. These and other issues constitute the merits of Anna's claims, and this appeal is intended to allow those matters to be fully developed and considered in the trial court.

**Standard of Review**

The determination of whether a court has subject-matter jurisdiction over a claim is a question of law, which is reviewed by appellate courts *de novo*.[45] Governmental immunity deprives a trial court of subject matter jurisdiction for lawsuits unless the state has consented to suit.[46] "In reviewing a grant or denial of a plea to the jurisdiction by the trial court, the appellate courts must determine if the plaintiff's pleadings, construed in favor of the plaintiff, allege sufficient facts affirmatively demonstrating the court's jurisdiction to hear the case.[47] Evidence submitted with a plea to the jurisdiction is to be considered if it is central to a jurisdictional issue.[48] The

---

[45] *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex. 2004).

[46] *Id.* at 224.

[47] *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476 (Tex. 2012).

[48] *Id.* at 476.

party claiming immunity may submit evidence to rebut the pleadings and undermine any claimed waiver of immunity.[49]

"In sum, a court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised."[50] A plaintiff bringing a claim against a government entity bears the burden of *alleging* facts that the trial court has subject matter jurisdiction over a case.[51] Only where the pleadings affirmatively negate the existence of jurisdiction may a plea to the jurisdiction be granted without allowing the plaintiff an opportunity to amend.[52] If a petition contains multiple claims, it should not be dismissed just because the court lacks jurisdiction over some of them.[53]

**Issue 1:  ORDER ON STATE'S PLEA WAS OVERBROAD WITH RESPECT TO SEPARATE PLEADINGS OF ANNA**

Nearly fifty years ago, Texas' Fifth Court of Appeals put it quite plainly:

"**What can be better established than the proposition that relief that has**

---

[49] *Miranda*, 133 S.W.3d at 227.

[50] *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000), *overruled on other grounds by Tex. Dep't of Parks Wildlife v. Miranda*, 133 S.W.3d 217 (Tex. 2004).

[51] *Gulf Coast Waste Disposal Auth. v. Four Seasons Equip., Inc.*, 321 S.W.3d 168, 173 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

[52] *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

[53] *See generally Thomas v. Long*, 207 S.W.3d 334 (Tex. 2006).

**not been prayed cannot be granted?**"[54] Even under briefing rules which call for liberal construction of filings under principles of doing substantial justice, it is appropriate for courts to limit their grants of relief to the contours of what the litigants actually seek by their pleadings.[55] Each plaintiff's claims must be assessed by reference to their own live pleadings, not through arguments or dispositive motions targeting those of another party.[56]

Also, under the applicable standards of review discussed *supra*, Anna must only *allege facts* which demonstrate jurisdiction—*e.g.*, that it has suffered concrete injuries that are redressable by relief against a named defendant—in order to remain in the proceeding and to engage in further litigation. The *merits* of the plaintiff's claims—matters such as whether the events described by pleadings actually occurred, or whether they justify the relief requested as to particular defendants—are not before any court considering something like the State's Plea. "In deciding a plea to the jurisdiction, a court may not weigh the claims' merits but must consider *only*

---

[54] *West End API Ltd. v. Rothplez*, 732 S.W.2d 371, 374 (Tex. App.—Dallas, writ ref'd n.r.e.).

[55] *Id.* (citing *Tex. Prudential Ins. Co. v. Dillard*, 307 S.W.2d 242 (Tex. 1957)); *see also Mattox v. County Comm'rs Court*, 389 S.W.3d 464 (Tex. App.—Houston [14th Dist.] 2012, pet. denied)(finding error where trial court granted relief not requested by any party or supported by any summary-judgment ground).

[56] *Dohlen v. City of San Antonio*, 643 S.W.3d 387, 398 (Tex. 2022) (not addressing standing issues in light of immunity defense requiring plaintiff be given opportunity to replead).

the plaintiffs' pleadings and the evidence pertinent to the jurisdictional inquiry."[57]

Recent Texas Supreme Court decisions have emphasized that "Texas law does not favor striking defective pleadings without providing plaintiffs an opportunity to replead."[58] In order for a plea to be granted without providing an opportunity for the plaintiff to amend as some jurisdictional deficiency which was found, a defendant must provide <u>evidence</u> demonstrating that it is "incurably" defective.[59]

## A. Content and Substance of State's Plea to Jurisdiction was Limited to Pleadings of Other Plaintiffs.

---

[57] *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). Anna believes it has raised multiple meritorious challenges to the constitutionality of SB 2038, but as this appeal arises from a ruling on a plea to the jurisdiction (rather than summary judgment), it appears untimely to brief them in detail. This includes, but is not limited to, the unconstitutional delegation of authority to suspend Tex. Loc. Gov't § 42.023 to private parties. *See generally Abbott v. City of El Paso*, 677 S.W.3d 800 (Tex. 2023) *vacated on other grounds by* 677 S.W.3d 914 (Tex. 2023) (finding appeal moot as executive order at issue had expired); *Brown Cracker & Candy Co. v. City of Dallas*, 137 S.W. 342 (Tex. 1911). Anna is willing to provide whatever additional briefing this court might find warranted, but concurs with the Grand Prairie Group that it would likely necessitate additional time for drafting and suitable motions for leave to exceed word count limitations if all constitutional challenges are to be argued in detail.

[58] *Dohlen v. City of San Antonio*, 643 S.W.3d 387, 397 (Tex. 2022).

[59] *See Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839-840 (Tex. 2007). A notable exception was discussed where pleadings alone demonstrate that a claim incurably falls outside any waiver of sovereign immunity. *Id.* at 840.

The only dispositive motion before the trial court which presented by the State Defendants was their Amended Plea to the Jurisdiction.[60] The prayer for relief within that filing was quite simple: "[State Defendants] respectfully reques[t] that this Court grant their Plea to the Jurisdiction and dismiss *the Cities'* claims in their entirety with prejudice."[61] The term "the Cities" utilizes a capitalization format which is well understood to reference a specially defined term, but the State's Plea provides no definition or explanation.[62] Other than the case style, and one passing comment that "the Cities do not allege that the Attorney General has enforced or threatened to enforce SB 2038 against any Plaintiff City, *Intervenor*, or any other Texas municipality", there is no mention of Anna or any other plaintiff who were in the suit on pleadings independent of the Grand Prairie Group.[63] Anna made direct efforts to ensure the trial court was mindful of its separate pleadings prior to the issuance of the Apr. 14 Order by its filings.[64]

---

[60] C.R. at 9081-9082 (Vol. 40, p. 60-61) (Apr. 14 Order, listing matters before the court) herein); C.R. 8624-8652 (Vol. 36, p. 67-95)(amended plea to jurisdiction filed Jan. 2, 2025); *see also* C.R. 8653 (notice of hearing for same, filed Jan. 2, 2025).

[61] C.R. 8647 (Vol. 36, p. 90)(italics added).

[62] *See generally* State's Plea.

[63] *Id.*; *see also* C.R. 8626 (quoted passage, italics added).

[64] *See, e.g.,* C.R. 8786 at ¶ 6 and n. 11 (p. 5 of "City of Anna's and City of Bonham's Response to Defendants' Pleas to the Jurisdiction"). "When evaluating the State's Plea, its merits must be considered with respect to each live pleading separately, as it should not be presumed that any pleading deficiencies (especially incurable defects)

20

**B. Anna's Unique Claims Were Never Challenged by State's Plea.**

There are numerous material differences in the live pleadings of Anna as compared to the Grand Prairie Group; it is not merely a matter of the same issues and arguments being presented by different counsel in alternative sequences or differing levels of detail.[65] While there is substantial overlap and various commonalities between these two pleadings—particularly where, as here, Anna directly adopted certain arguments and authority presented by its co-plaintiff cities—entirely distinct and unique grounds for suit were also in Anna's live pleading.[66]

The State's Plea is replete with references to other parties' live pleadings, including a number of direct quotations.[67] But it contains <u>zero</u> references to Anna's live pleading or any quotations from Anna's filings, which inherently clouded the issues before the trial court by conflating the various parties' true positions.[68] The following claims and issues presented

---

would be applicable to different documents." *Id.*, citing *City of New Braunfels v. Stop the Ordinances Please, et al.*, 2013 WL 692446 (Tex. App.—Austin, Feb. 21, 2023, no pet.).

[65] *Compare* Anna's Second Amended Petition in Intervention, C.R. 8236-8332 (Vol. 33, p. 3-99) *with* [Grand Prairie Group's] Fourth Amended Original Petition for Declaratory Relief, C.R. 6123-6186 (Vol. 24, p. 3-66).

[66] *See generally id.*; C.R. 8245 (at ¶ 24, Anna's limited incorporation of material from Fourth Amended Petition by reference)

[67] *See, e.g.,* C.R. 8625 (two citations to 4th Am. Pet.); C.R. 8625 (three citations to same).

[68] *See generally* State's Plea.

in Anna's live pleading but not within the 4th Am. Petition should have been outside the scope of the State's Plea, for lack of any appropriate request for relief or actual argument to the trial court when the matters were being heard:

- SB 2038 cannot be "self-executing" in the manner the State suggests (Sec. A);[69]
- SB 2038 is void for vagueness of clause "by operation of law" (Sec. C(i));[70]
- SB 2038 impermissibly intrudes on home rule authority (Section C(iii));[71]
- SB 2038 election provisions are **void** local and special laws due to cost-shifting provisions (Section C(iv))[72];
- SB 2038 cost-shifting provisions are void as improper private gifts of public funds (Sec. D)[73];

---

[69] C.R. 8246-8248. Anna recognizes that since the briefing in this case was submitted to the trial court, an opinion was issued in by the Texas Supreme Court in a different suit related to SB 2038. *See generally Elliott v. City of College Station*, ___ S.W.3d ___, 2025 WL 1350002 (Tex. May 9, 2025). While that opinion discusses the clause "by operation of law" as part of its reasoning, the question of whether such clauses function as magic spells which prevent judicial review for constitutionality was not before the *Elliott* court, and any implicit support for that conclusion should be considered merely dicta. *Id.* Anna also notes that the opinion conflates declarative statutory statements regarding an action by a "municipality" (Tex. Loc. Gov't Code § 42.105(c) and § 42.155(a)), with "impos[ing] a mandatory duty on City officials"— despite there being no reference in those statutes to any municipal officials. Anna would dispute that SB 2038 attempts to dictate the votes of individual members of its City Council, or that the Texas Legislature has the power to do so. *See generally* SB 2038; *City of Floresville v. Nissen*, 654 S.W.3d 11 (Tex. App.—San Antonio 2022, pet. denied)(intent to limit power of home rule cities must "appear with unmistakable clarity"). Voting by municipal officials is a form of speech and would subject to First Amendment protections, even if there might be consequences for their municipality if they failed to accomplish some *result* called for by statute.

[70] C.R. 8250, ¶ 32 at bullet 3.

[71] C.R. 8252.

[72] C.R. 8252-8254.

[73] C.R. 8254-8255.

As is noted extensively throughout the plaintiffs' filings throughout this case, SB 2038 was adopted <u>without</u> any savings/severability clauses.[74] As such, if any single component of the law is found to be unconstitutional, the entire statute should be declared unenforceable as void *ab initio*.[75] Whether or not the State's jurisdictional challenges are valid with respect to some of them, so long as one ground survives, its merits must be considered by the trial court in the first instance.

**C. April 14 Order Should Not Have Closed Entire Case.**

In keeping with its filings in the court below seeking modification of the Apr. 14 Order, Anna does not contend that no part of the State's Plea addressed matters raised in its Second Amended Petition, and recognizes that it was reasonable for the trial court to issue rulings on those claims common between the parties-plaintiff.[76] As such, Anna does not argue it was error for *some portions* of its pleadings to be addressed through a trial court

---

[74]  *See, e.g,* C.R. 8255-8266 (Sec. E and F of Anna's live pleading); *see generally* SB 2038.

[75]  *See generally* Tex. Gov't Code § 311.032(c). All of the adopted SB 2038 provisions are interdependent and part of the same statutory framework; even if a court should find the statute to be constitutional and enforceable in some respects, a constitutional infirmity in any part is fatal to the entire scheme.

[76]  C.R. 9154-9155 (TRCP 329b Motion at p. 2-3).

ruling on the State's Plea, but it was error to grant relief beyond the scope of the defendant's actual requests for relief or arguments.[77]

Anna had claims within its live pleading that were not effectively challenged by the State's Plea, making the clause of the Apr. 14 Order reading "[t]his order resolves and pending claims and closes the case" premature.[78] This is particularly important where, as here, the order purporting to dispose of the case on a plea to the jurisdiction did *not* simultaneously deny all pending motions, and parties-plaintiff have motions for leave to amend pleadings and join additional parties awaiting decision in the court's docket. Accordingly, the Apr. 14 Order should be reversed in whole or in part and this case remanded for further proceedings.[79]

**Issue 2:    Remand is warranted for consideration of pending motions, pleading amendments, and joinder of additional State defendants to forestall ongoing injuries injuring Texas municipalities via SB 2038.**

  **A. Pending motions in court were implicitly denied, or deemed overruled by passage of time.**

---

[77] Anna has proposed this error be corrected by specifying that the State's Plea targeted the 4th Am. Pet., as supplemented, and that the claims by intervenor-plaintiffs (including Anna) as "asserted therein" were the matters subject to dismissal. C.R. 9154-9155.

[78] *See* C.R. 9082 (conclusion of Apr. 14 Order).

[79] Anna's timely motion to modify the judgment to address this issue (*see* C.R. 9156 at ¶ 6) is subject to deemed denial by TRCP 329bc).

24

Anna timely made the following requests and motions in the trial court (collectively, "Pending Motions"):

- Joint Motion for Leave to Amend Petition to Join Additional Parties by City of Bonham and City of Anna;[80]
- Motion to Modify, Correct, or Reform Judgment[81];
- Alternative Motion for New Trial[82]

These Pending Motions stated the grounds for the ruling sought with sufficient specificity to make the trial court aware of Anna's complaints.[83] The trial court has implicitly denied the Pending Motions requests by failing to provide any of the relief requested prior to these appellate proceedings. The Pending Motions included a motion for a new trial which was not determined by written order signed within 75 days from the Apr. 14 Order, as such, it is deemed overruled, and error has been properly preserved.[84]

---

[80] C.R. 8209-8233 (Vol. 32, p. 143-167). While it is represented in this appeal by common legal counsel, issues unique the City of Bonham are beyond the scope of this brief.

[81] C.R. 9153-9156 (Vol. 41, p. 3-6) (filed May 14, 2025).

[82] C.R. 9156-57 (Vol. 41, p. 6-7)(filed May 14, 2025).

[83] Namely, that the Apr. 14 Order was overly broad in finding no jurisdiction existed over any of Anna's claims, and that no additional proceedings were warranted to join necessary parties before closing the case. *See generally* Pending Motions; Tex. Civ. Prac. & Rem. Code 37.006 (mandating joinder of all interested parties in declaratory judgment cases).

[84] C.R. 9156-57 (Vol. 41, p. 6-7). The 75th day after the signing of the Apr. 14 Order was June 28, 2025. *See* TRAP 33.1(b) (civil case preservation of error for both motions for new trial and motions to modify judgment if overruled) and TRCP 329b(c)(providing that motions for new trial are overruled unless "determined by written order signed within 75 days after the judgment is signed").

**B. Anna is entitled to amend pleadings, and potentially join additional necessary parties, before closure of the case.**

Anna cannot concede that the trial court was correct in finding that it lacked jurisdiction over the claims before it in the live pleadings, whether they were raised in the Grand Prairie Group's Fourth Amended Petition or were within Anna's alone.[85] In part, it is unavoidable due to the lack of detail in the Apr. 14 Order.[86]

But even presuming *arguendo* that jurisdictional defects existed as to each and every claim raised by Anna, all Texas plaintiffs are entitled to amend their pleadings prior to a final dismissal. If the absence of a necessary party—such various subordinate agencies and officials within the State of Texas who are enforcing, or threatening to enforce, SB 2038 in a manner more direct than the instant appellees—it is long-established that a trial court

---

[85] As noted *infra*, Anna adopts and incorporates the authorities and legal reasoning set forth in the Grand Prairie Group's brief in this appeal with respect to the claims common between the Fourth Amended Petition and Anna's independent pleading. In the interests of judicial economy, it does not repeat them here.

[86] The trial court used the single word "GRANTED" as the decision, followed by the direction that "all claims by Plaintiffs and Intervenor-Plaintiffs against [named defendants] are DISMISSED without prejudice." C.R. 9081 (Vol. 40, p. 60). The Grand Prairie Group's motion for summary judgment was denied "as moot because the court lacks jurisdiction", but it is impossible to determine what aspect of the various plaintiffs' separate pleadings was lacking. *See generally* C.R. 9081-82.

"may and will" *by its own motion* stay proceedings until such parties are brought in "to properly adjust equities and prevent multiplicity of suits."[87]

Even if the appellate court might agree that the live pleadings of Anna or other plaintiff municipalities do not expressly name enough State agencies or officials to establish jurisdiction, since the hearings underlying the Apr. 14 Order, new facts have come to light showing that the Texas Commission on Environmental Quality ("TCEQ") has taken multiple actions to enforce SB 2038 and injured Anna.[88] This includes, but is not limited to, TCEQ usurping the role of the judiciary and promulgating documents that amount to declaratory judgments regarding the status of territory—specifically, that land to be included in a proposed utility district was not actually within Anna's ETJ, despite being in the appropriate proximity to the city limits, and there never being any consent from Anna to a reduction of its ETJ.[89] Only the Texas Legislature is constitutionally authorized to suspend the statutes it enacts, and any statute which purports to allow such behavior by private parties,

---

[87] *Ball v. Cundiff*, 127 S.W.2d 502 (Tex. Civ. App.—Fort Worth 1939, writ dism'd judgm't cor.)

[88] *See* C.R. 9159-9194 (Exhibit 1 to Anna's motion for new trial).

[89] C.R. 9175-76 (Feb. 6, 2025 "Technical Memorandum" by TCEQ)(highlights added).

27

TCEQ, or any other party by their own election or discretion is therefore void.[90]

The standing elements regarding TCEQ are met and would likely be set forth in amended pleadings by Anna and/or other plaintiff municipalities upon remand of this case: (1) it has suffered an injury-in-fact (*e.g.,* loss of conditions of MUD approval, state promulgation of erroneous documents re: ETJ status); (2) that injury is traceable to TCEQ; (3) this harm can be redressed by a decision declaring SB 2038 unconstitutional.[91]

It has been long established by the Texas Supreme Court that unless the pleadings "affirmatively demonstrate an *incurable* jurisdictional defect" it is appropriate to reverse and remand the case to provide an opportunity to amend pleadings.[92] **Plaintiffs are entitled to amend *after* a court rules on a plea to the jurisdiction.**[93] If the issue is merely a pleading deficiency, an

---

[90] *See Brown Cracker & Candy Co. v. City of Dallas*, 137 S.W. 342 (Tex. 1911) (finding no power for Legislature to delegate power to municipality to suspend statute); *see also Abbott v. City of El Paso*, 668 S.W.3d 800 (Tex. 2023), *vacated on other grounds by* 677 S.W.3d 914 (Tex. 2023) (finding appeal moot as executive order at issue had expired).

[91] *See generally Lujan v. Defenders of Wildlife*, 504 US. 555 (1992).

[92] *County of Cameron v. Brown*, 80 S.W.3d 549, 558-59 (Tex. 2002).

[93] *Texas A&M Univ. Sys. V. Koseoglu*, 233 S.W.3d 835, 839-840 (Tex. 2007) (agreeing with court of appeals that "a plaintiff may stand on his pleadings in the face of a plea to the jurisdiction unless and until a court determines that the plea is meritorious.")(emphasis added); *see also* 167 S.W.3d 374 (Tex. App.—Waco 2005, *aff'd in part, rev'd in part* by 233 S.W.3d 835) (remanding case to trial court for further proceedings).

opportunity to amend is described as "a matter of right."[94] As such, the Apr. 14 Order should be reversed in whole or in part and the case remanded for further proceedings. [95]

**Issue 3+:** ***Anna incorporates by reference the Issues Presented by co-appellants City of Grand Prairie, et al., as to all those matters applicable to all Texas municipalities.***

Contemporaneously with Anna's submission of this brief, the Grand Prairie Group is filing its appellant brief in this case, which discusses at length the facts and authority relating to the jurisdictional (standing) arguments of the State's Plea which were granted in the Apr. 14 Order. Rather than restate those matters herein (and in hopes of reducing the length of filings in a case which already features a quite voluminous record), Anna adopts by reference, in accordance with TRAP 9.7, the following aspects of the Grand Prairie Group filings:

---

[94] *County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex. 2002) (everything except demonstration of incurable defects in jurisdiction is "an issue of pleading sufficiency"); *see also Brown* at 558-59*.* (citing *7* William V. Dorsaneo III, Texas Litigation Guide § 70.03[4][f]).

[95] Anna also served interrogatories and requests for admissions on the State of Texas in an effort to end the prevarication regarding whether *any* agency or official has power to enforce SB 2038 (in similar fashion to the City of Grand Prairie's attempt to obtain such information through mandatory disclosures). Pursuant to a TRCP 11 agreement, it was agreed no answers were due until 10 days after the trial court's ruling on the State's Plea. C.R. 9017-18 (Vol. 39, p. 108-09)(Jan. 22, 2025). Should this case be remanded, the State's responses would hopefully issue without undue delay.

A. All factual allegations common to all Texas municipalities (*i.e.,* to the exclusion of factual allegations specific to certain municipalities joined in the GP Group brief);

B. Arguments and legal authorities relating to all issues of standing and sovereign immunity, including without limitation the "one-party standing" rule, but excluding those matters specific to the Aubrey Municipal Development District ("AMDD").

Should it appear necessary to avoid confusion of party positions and issues as the appellate proceedings continue, Anna would file an amendment or supplement to this brief which provides greater specificity regarding the content it adopts herein once the referenced filing has been submitted by its co-plaintiff-appellants.[96]

To those incorporated arguments, Anna would add or clarify the following particulars which relate to the standing and immunity issues implicated by this appeal:

---

[96] *See generally* TRAP 38.7 (brief may be amended or supplemented whenever justice requires, on whatever terms the court may prescribe). Anna respectfully requests that the court specify appropriate terms for additional briefing if further detail regarding its incorporation of other party's arguments is desired.

1. Anna does not claim status identical to the "Contract Cities" within the GP Group (Burleson, Aledo, and Hutto)[97], but does have a variety of delayed-annexation agreements with local property owners. In addition, Anna contends that parallel and similar injuries are arising from SB 2038 with respect to ultimate boundary agreements and interlocal agreements which relate to ETJ matters.[98] Anna therefore adopts the arguments and authority presented in the GP Group's briefing with respect to Contract Cities, but in the context of its own separate pleading.[99]

2. Anna does not adopt the arguments specific to the AMDD, but Anna is suffering analogous injuries due to the conduct of TCEQ, as that agency administers utility district creation procedures in a manner

---

[97] In particular, Anna does not believe that to date it has received an ETJ release petition which would affect a property currently subject to a delayed annexation agreement, which may set it apart from the GP Group "Contract Cities" in that sense.

[98] *See* C.R. 4248-4250 (Anna's live pleading at Sec. B); *see, eg.,* C.R. 8295-8318 (resolution and exhibits for Anna-Melissa boundary adjustment agreement); C.R. 8319-8330 (Anna-Weston "Boundary Contract").

[99] *See* C.R. 8248-8250 (declaratory judgment claim re: Contracts Clause in Anna's 2nd Am. Pet.). The most salient differences are likely to be that Anna alleges a violation of the "Contracts Clause" in terms of the parallel components of the United States Constitution in addition to the Texas Constitution, Article 1, Section 16. *See id* at n. 22; *see also* C.R. 8242 (Vol. 33, p. 9 at ¶ 17 and n. 11)(discussing U.S. CONST. Art. 1, § 10, cl. 1).

31

which unlawfully deprives Anna of rights provided by Texas law.[100] Similar to the Texas Comptroller's ministerial duties with respect to distribution of sales tax proceeds, TCEQ has ministerial duties to properly recognize municipal authority to impose conditions to its consent to creation of districts in its ETJ. Anna adopts and incorporates the arguments and authority relating to AMDD subject to these distinctions.[101]

3. Anna emphasizes that with respect to the applicable standards of review for Article III <u>standing</u> and the *Ex parte Young* <u>immunity</u> analysis, discussed in detail in the GP Group brief, that the standing threshold applicable to this appeal is least demanding of them. As such, the prevarications of the Texas Attorney General and artful

---

[100] *See* C.R. 8213-8214 (pending motion for leave to join parties, including additional Texas officials and agencies, providing list of quotations). The State obfuscates its relationship with its constituent agencies and officials, regarding which it has exclusive knowledge and supervisory powers, by repeated reference to "the State *itself*" and reliance on SB 2038's silence. *See id.* (italics added). The State's filings in this case also carefully limit themselves to the past/present (at least through the date of filing) when it claims to not have any interest in enforcing SB 2038 and does not "currently" enforce it. *See, e.g.,* C.R. 8216-17 (quote from State's disclosure stating it is "*currently* unaware of any potential parties")(italics added). All of these statements are extremely hard to credit in light of TCEQ conduct in Anna ETJ.

[101] Anna will provide supplemental or amended briefing as necessary to provide greater detail as needed.

temporal phrasing in their filings should not be sufficient to eliminate standing.[102]

4. Anna would emphasize that the posture of this case requires allegations in plaintiffs' pleadings to be taken as true, which it believes should include the allegations that constitutional injuries have occurred. Unless *evidence* is supplied by a defendant to that would negate the existence of jurisdiction, the Court need only look to the plaintiffs' pleadings. Stated another way: determinations of the constitutionality of SB 2038 are the merits of this case, which have yet to be considered by the trial court.[103]

5. Anna substitutes its own Prayer for relief, provided below.

## PRAYER

Anna respectfully requests that this Court reverse the judgment of the trial court embodied by the Apr. 14 Order, and either render judgment denying the State's Plea in its entirety or in part, and/or remand the case to the court below for further proceedings regarding the claims outside of the

---

[102] Further, the TCEQ conduct affecting Anna's ETJ should be considered "*some affirmative action*" towards enforcement of SB 2038. *See Mi Familia Vota v. Ogg*, 105 F.4th 313, 330-31 (5th Cir. 2024) (italics in original).

[103] *See generally* "Standard of Review", *supra*. By analogy, a defendant should not be able to negate jurisdiction in a Fourth Amendment excessive force case merely by arguing that the plaintiff's pleadings do not conclusively *prove* that the acts of violence alleged actually occurred and resulted in plaintiffs' injury, or failing to carry some burden of persuasion regarding the merits of their claims.

State's Plea, resolution of the Pending Motions, and to provide Anna and other plaintiffs with their right to amend their pleadings, and ultimately for determination of the enforceability of SB 2038.

Respectfully Submitted,

/s/ David Overcash
David Overcash

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of Appellant's Brief, via the Court's CM/ECF system on August 15, 2025.

/s/ David Overcash
David Overcash

**CERTIFICATE OF COMPLIANCE**

I certify that this document was produced on a computer using Microsoft Word and contains less than 7,700 words, as determined by the computer software's word-count function, excluding the sections of the documents listed in Texas Rule of Appellate Procedure 9.4(i)(1).

/s/ David Overcash
David Overcash

## APPENDIX

SB 2038.......................................................................... 1

Order on Pending Motions (Apr. 14, 2025) ........................ 2

Exhibit 1 to Anna's TRCP 329b Motion

 .................................................................................... 3

Correspondence between Anna and Collin County (Apr. 1,

2025)…….. .................................................................... 4



Eighty-Eighth Texas Legislature, 2023 Regular Session

S.B. No. 2038

RELEASE OF AN AREA FROM A MUNICIPALITY'S EXTRATERRITORIAL JURISDICTION BY PETITION OR ELECTION

AN ACT

relating to release of an area from a municipality's extraterritorial jurisdiction by petition or election.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Chapter 42, Local Government Code, is amended by adding Subchapters D and E to read as follows:

SUBCHAPTER D. RELEASE OF AREA BY PETITION OF LANDOWNER OR RESIDENT FROM EXTRATERRITORIAL JURISDICTION

[Note: TX LOCAL GOVT § 42.101]

Sec. 42.101. APPLICABILITY. This subchapter does not apply to an area located:

(1) within five miles of the boundary of a military base, as defined by Section 43.0117, at which an active training program is conducted;

(2) in an area that was voluntarily annexed into the extraterritorial jurisdiction that is located in a county:

　　(A) in which the population grew by more than 50 percent from the previous federal decennial census in the federal decennial census conducted in 2020; and

　　(B) that has a population greater than 240,000;

(3) within the portion of the extraterritorial jurisdiction of a municipality with a population of more than 1.4 million that is:

　　(A) within 15 miles of the boundary of a military base, as defined by Section 43.0117, at which an active training program is conducted; and

　　(B) in a county with a population of more than two million;

(4) in an area designated as an industrial district under Section 42.044; or

(5) in an area subject to a strategic partnership agreement entered into under Section 43.0751.

[Note: TX LOCAL GOVT § 42.102]

Sec. 42.102. AUTHORITY TO FILE PETITION FOR RELEASE. (a) A resident of an area in a municipality's extraterritorial jurisdiction may file a petition with the municipality in accordance with this subchapter for the area to be released from the extraterritorial jurisdiction.

(b) The owner or owners of the majority in value of an area consisting of one or more parcels of land in a municipality's extraterritorial jurisdiction may file a petition with the municipality in accordance with this subchapter for the area to be released from the extraterritorial jurisdiction.

[Note: TX LOCAL GOVT § 42.103]

Sec. 42.103. APPLICABILITY OF OTHER LAW. Chapter 277, Election Code, applies to a petition requesting removal under this subchapter.

[Note: TX LOCAL GOVT § 42.104]

Sec. 42.104. PETITION REQUIREMENTS. (a) A petition requesting release under this subchapter must be signed by:

    (1) more than 50 percent of the registered voters of the area described by the petition as of the date of the preceding uniform election date; or

    (2) a majority in value of the holders of title of land in the area described by the petition, as indicated by the tax rolls of the applicable central appraisal district.

(b) A person filing a petition under this subchapter must satisfy the signature requirement described by Subsection (a) not later than the 180th day after the date the first signature for the petition is obtained.

(c) A signature collected under this section must be in writing.

(d) The petition must include a map of the land to be released and describe the boundaries of the land to be released by:

    (1) metes and bounds; or

    (2) lot and block number, if there is a recorded map or plat.

[Note: TX LOCAL GOVT § 42.105]

Sec. 42.105. RESULTS OF PETITION. (a) A petition requesting removal under this subchapter shall be verified by the municipal secretary or other person responsible for verifying signatures.

(b) The municipality shall notify the residents and landowners of the area described by the petition of the results of the petition. The municipality may satisfy this requirement by notifying the person who filed the petition under Section 42.102.

(c) If a resident or landowner obtains the number of signatures on the petition required under Section 42.104 to release the area from the municipality's extraterritorial jurisdiction, the municipality shall immediately release the area from the municipality's extraterritorial jurisdiction.

(d) If a municipality fails to take action to release the area under Subsection (c) by the later of the 45th day after the date the municipality receives the petition or the next meeting of the municipality's governing body that occurs after the 30th day after the date the municipality receives the petition, the area is released by operation of law.

(e) Notwithstanding any other law, an area released from a municipality's extraterritorial jurisdiction under this section may not be included in the extraterritorial jurisdiction or the corporate boundaries of a municipality, unless the owner or owners of the area subsequently request that the area be included in the municipality's extraterritorial jurisdiction or corporate boundaries.

SUBCHAPTER E. RELEASE OF AREA BY ELECTION FROM EXTRATERRITORIAL JURISDICTION

[Note: TX LOCAL GOVT § 42.151]

Sec. 42.151. APPLICABILITY. This subchapter does not apply to an area located:

    (1) within five miles of the boundary of a military base, as defined by Section 43.0117, at which an active training program is conducted;

    (2) in an area that was voluntarily annexed into the extraterritorial jurisdiction that is located in a county:

        (A) in which the population grew by more than 50 percent from the previous federal decennial census in the federal decennial census conducted in 2020; and

(B) that has a population greater than 240,000;

(3) within the portion of the extraterritorial jurisdiction of a municipality with a population of more than 1.4 million that is:

(A) within 15 miles of the boundary of a military base, as defined by Section 43.0117, at which an active training program is conducted; and

(B) in a county with a population of more than two million;

(4) in an area designated as an industrial district under Section 42.044; or

(5) in an area subject to a strategic partnership agreement entered into under Section 43.0751.

[Note: TX LOCAL GOVT § 42.152]

Sec. 42.152. AUTHORITY TO REQUEST ELECTION FOR RELEASE. (a) A resident of an area in a municipality's extraterritorial jurisdiction may request the municipality to hold an election in accordance with this subchapter to vote on the question of whether to release the area from the municipality's extraterritorial jurisdiction by filing with the municipality a petition that includes the signatures of at least five percent of the registered voters residing in the area as of the date of the preceding uniform election date.

(b) A resident may not request another election on the question of releasing the same or substantially same area from the municipality's extraterritorial jurisdiction before the second anniversary of the date the municipality receives a petition filed under Subsection (a).

(c) The petition must include a map of the land to be released and describe the boundaries of the land to be released by:
(1) metes and bounds; or

(2) lot and block number, if there is a recorded map or plat.

[Note: TX LOCAL GOVT § 42.153]

Sec. 42.153. ELECTION. (a) Except as provided by Section 42.156, a municipality shall order an election on the question of whether to release an area from the municipality's extraterritorial jurisdiction to be held on the first uniform election date that falls on or after the 90th day after the date the municipality receives a petition that complies with Section 42.152.

(b) The municipality shall hold the election ordered under this section in the area described by the petition at which the qualified voters of the area described by the petition may vote on the question of the release.

(c) An election ordered under this section must be held in the same manner as general elections of the municipality. The municipality shall pay for the costs of holding the election.

[Note: TX LOCAL GOVT § 42.154]

Sec. 42.154. RESULTS OF ELECTION. (a) The governing body of a municipality shall canvass the election returns for an election held under this subchapter in accordance with Chapter 67, Election Code.

(b) Not later than 48 hours after the canvass of an election held under this subchapter, the municipality shall notify the residents of the area proposed to be released from the municipality's extraterritorial jurisdiction of the results of the election. The municipality may satisfy this requirement by notifying the person who filed the petition under Section 42.152.

[Note: TX LOCAL GOVT § 42.155]

Sec. 42.155. RELEASE OF AREA AS RESULT OF ELECTION. (a) If at the election held under this subchapter a majority of qualified voters of the area to be released approve the proposed release, the municipality shall immediately release the area from the municipality's extraterritorial jurisdiction.

(b) If the municipality fails to take action to release the area under Subsection (a) by the later of the next meeting of the municipality's governing body or the 15th day after the canvass date for the election, the area is released by operation of law.

(c) Notwithstanding any other law, an area released from a municipality's extraterritorial jurisdiction under this section may not be included in the extraterritorial jurisdiction or the corporate boundaries of a municipality, unless the owner or owners of the area subsequently request that the area be included in the municipality's extraterritorial jurisdiction or corporate boundaries.

[Note:  TX LOCAL GOVT § 42.156 ]

Sec. 42.156. VOLUNTARY RELEASE. Instead of holding an election under Section 42.153, the municipality may voluntarily release the area for which the election is to be held from the municipality's extraterritorial jurisdiction before the date on which the election would have been held under Section 42.153(a).

SECTION 2. Section 42.021, Local Government Code, is amended by adding Subsection (e) to read as follows:

[ Note:  TX LOCAL GOVT § 42.021]

(e) An annexation commenced after January 1, 2023, does not expand the extraterritorial jurisdiction of a municipality unless contemporaneously with the annexation the owner or owners of the area that would be included in the municipality's extraterritorial jurisdiction as a result of the annexation request that the area be included in the municipality's extraterritorial jurisdiction.

SECTION 3. Section 242.001, Local Government Code, is amended by adding Subsection (j) to read as follows:
(j) If an area subject to an agreement under Subsection (c) is removed from a municipality's extraterritorial jurisdiction, the agreement is terminated as to the area and the county is the political subdivision authorized to regulate subdivisions in the removed area.

[Note: TX LOCAL GOVT § 42.021]

SECTION 4. A municipality shall release extraterritorial jurisdiction acquired from an annexation commenced after January 1, 2023, as necessary to comply with Section 42.021(e), Local Government Code, as added by this Act.

SECTION 5. This Act takes effect September 1, 2023.

Passed the Senate on April 27, 2023: Yeas 20, Nays 11; the Senate concurred in House amendments on May 8, 2023: Yeas 20, Nays 11; passed the House, with amendments, on May 3, 2023: Yeas 127, Nays 18, one present not voting.

**Approved May 19, 2023.**

**Effective September 1, 2023.**

04/14/2025 09:33:24 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-23-007785

CAUSE NO. D-1-GN-23-007785

| | | |
|---|---|---|
| CITY OF GRAND PRAIRIE *et al.*, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| and CITY OF BROWNSVILLE, *et al.*, | § | TRAVIS COUNTY, TEXAS |
| *Intervenor-Plaintiffs,* | § | |
| | § | |
| v. | § | 261ST JUDICIAL DISTRICT |
| | § | |
| The STATE OF TEXAS, *et al.*, | § | |
| | § | |
| *Defendants,* | § | |
| | § | |
| and 2020 Long Tail Trail Investments, | § | |
| LLC, | § | |
| *Intervenor-Defendant.* | § | |

---

## ORDER ON PENDING MOTIONS

---

Before the Court is State Defendants' Amended Plea to the Jurisdiction, the State's Motion to Strike 2020 Long Tail Trail Investments, LLC's Original Petition in Intervention, Plaintiffs' Motion for Leave to File Supplemental Petition, Plaintiffs' Amended Motion for Summary Judgment, and Long Tail's Amended Motion for Summary Judgment. Upon consideration of the Motions, the Court has determined each the following:

IT IS HEREBY ORDERED that:

- Plaintiffs' Motion for Leave to File Supplemental Petition is GRANTED;

- The State's Motion to Strike 2020 Long Tail Trail Investments, LLC's Original Petition in Intervention is GRANTED;

- State Defendants' Amended Plea to the Jurisdiction is GRANTED and all claims by Plaintiffs and Intervenor-Plaintiffs against the State of Texas, Attorney General Ken Paxton, Comptroller Glenn Hegar, and the Office of Comptroller of Public Accounts are DISMISSED without prejudice.

IT IS FURTHER ORDERED that:

- Plaintiffs' Amended Motion for Summary Judgment is DENIED as moot because the court lacks jurisdiction.

- Long Tail Trail's Amended Motion for Summary Judgment is DENIED as moot because the Court grants the State's Motion to Strike the Intervention.

This order resolves all pending claims and closes the case.

SIGNED on this the __14th__ day of __April__, 2025.

_____
JUDGE MARIA CANTÚ HEXSEL

AGREED AS TO FORM AND SUBSTANCE:

*/s/ Allison Collin by permission*
Allison Collins
Assistant Attorney General
State Bar No. 24127467
Counsel for State of Texas
Defendant


AGREED AS TO FORM (ONLY):


*/s/ Timothy A. Dunn*
Timothy A. Dunn
Attorney
State Bar No. 24050542
Counsel for Plaintiff Cities


*/s/ William Thompson by permission*
William Thompson
Attorney
State Bar No. 24088531
Counsel for Intervenor 2020 Long Tail Trail Investments, LLC


_____
David Overcash
Attorney
State Bar No. 24075516
Counsel for Intervenors City of Anna and City of Bonham


_____
Matthew L. Weston
Attorney
State Bar No. 24037698
Counsel for Intervenor City of Cibolo

/s/ Lena Chaisson-Munoz by permission
Lena Chaisson-Munoz
Attorney
State Bar No. 24044743
Counsel for Intervenor City of Brownsville

**EXHIBIT 1**

The City of Anna respectfully requests that the Court take judicial notice of the matters set forth below pursuant to TRE 201.

**Item 1:** Obtained from the Texas Secretary of State's online information for the Texas Register, December 13, 2024, Volume 49 Number 50, Pages 10085-10154 (https://www.sos.state.tx.us/texreg/archive/December132024/index.html , last visited May 14, 2025). Reflects TCEQ notices regarding GRBK Edgewood, LLC, a petitioner who sought release from the City of Anna's ETJ via petition under SB 2038.

**Item 2:** Notice of District Petition – TCEQ Internal Control No. D-10292024-053 (obtained from https://www14.tceq.texas.gov/epic/eNotice/ , last visited May 14, 2025)(highlighting added).

**Item 3:** An Order Granting the Petition for Creation of the Seven Springs Municipal Utility District of Collin County and Appointing Temporary Directors, issued February 21, 2025. Includes an Exhibit A describing the subject area which matches that of Item 4, and Exhibit B, a TCEQ Technical Memorandum dated February 6, 2025, which includes multiple TCEQ assertions that the land at issue is outside any ETJ (highlighting added).

**Item 4:** Resolution 2024-9-1680, adopted by the City Council of Anna, Texas on September 24, 2024. Reflects that property owned by the applicant for Item 1, understood to be part of the land affected by D-10292024-053, is actually situated in the City of Anna's ETJ, and was the subject of a request for the City's consent to creation of the subject Seven Springs Utility District. Exhibit A reflects the legal description of the subject area; Exhibit B details the conditions imposed on the City Council's consent to the district's creation.

**Item 5:** GIS rendering depicting the approximate ETJ boundaries in the subject area prior to any putative effects of any SB 2038 petition(s).

---

**ITEM 1: EXCERPT FROM**
**https://www.sos.state.tx.us/texreg/archive/December132024/In%20Addition/In%20 Addition.html#51 (last visited May 14, 2025)(highlighting added)**


**Notice of District Petition TCEQ Internal Control No. D-10292024-053**

Notice issued December 4, 2024

TCEQ Internal Control No. D-10292024-053: GRBK Edgewood, LLC, (Petitioner) filed a petition for creation of Seven Springs Municipal Utility District of Collin County (District)

with the Texas Commission on Environmental Quality (TCEQ). The petition was filed pursuant to Article XVI, §59 of the Constitution of the State of Texas; Chapters 49 and 54 of the Texas Water Code; 30 Texas Administrative Code Chapter 293; and the procedural rules of the TCEQ. The petition states that: (1) the Petitioner holds title to a majority in value of the land to be included in the proposed District; (2) there are no lienholders on the property to be included in the proposed District (3) the proposed District will contain approximately 405.654 acres located within Collin County, Texas; and (4) none of the land within the proposed District is within the corporate limits or extraterritorial jurisdiction of any city. The petition further states that the proposed District will: (1) construct, maintain and operate a waterworks system, including to purchase and sale of water, for domestic and commercial purposes; (2) construct, maintain and operate a sanitary wastewater collection, treatment and disposal system, for domestic and commercial purposes; (3) construct, install, maintain, purchase and operate drainage and roadway facilities and improvements; and (4) construct, install, maintain, purchase and operate facilities, systems, plants and enterprises such additional facilities as shall be consonant with the purposes for which the proposed District is created. According to the petition, a preliminary investigation has been made to determine the cost of the project, and it is estimated by the Petitioners that the cost of said project will be approximately $83,730,000 ($63,620,000 for water, wastewater, and drainage plus $20,110,000 for roads).

## INFORMATION SECTION

To view the complete issued notice, view the notice on our website at www.tceq.texas.gov/agency/cc/pub_notice.html or call the Office of the Chief Clerk at (512) 239-3300 to obtain a copy of the complete notice. When searching the website, type in the issued date range shown at the top of this document to obtain search results. The TCEQ may grant a contested case hearing on the petition if a written hearing request is filed within 30 days after the newspaper publication of the notice. To request a contested case hearing, you must submit the following: (1) your name (or for a group or association, an official representative), mailing address, daytime phone number, and fax number, if any; (2) the name of the Petitioner and the TCEQ Internal Control Number; (3) the statement "I/we request a contested case hearing"; (4) a brief description of how you would be affected by the petition in a way not common to the general public; and (5) the location of your property relative to the proposed District's boundaries. You may also submit your proposed adjustments to the petition. Requests for a contested case hearing must be submitted in writing to the Office of the Chief Clerk at the address provided in the information section below. The Executive Director may approve the petition unless a written request for a contested case hearing is filed within 30 days after the newspaper publication of this notice. If a hearing request is filed, the Executive Director will not approve the petition and will forward the petition and hearing

request to the TCEQ Commissioners for their consideration at a scheduled Commission meeting. If a contested case hearing is held, it will be a legal proceeding similar to a civil trial in state district court. Written hearing requests should be submitted to the Office of the Chief Clerk, MC 105, TCEQ, P.O. Box 13087, Austin, Texas 78711-3087. For information concerning the hearing process, please contact the Public Interest Counsel, MC 103, at the same address. For additional information, individual members of the general public may contact the Districts Review Team, at (512) 239-4691. Si desea información en español, puede llamar al (512) 239-0200. General information regarding TCEQ can be found at our website at www.tceq.texas.gov.

TRD-202405884

Laurie Gharis

Chief Clerk

Texas Commission on Environmental Quality

Filed: December 4, 2024



# Texas Commission On Environmental Quality



## NOTICE OF DISTRICT PETITION
## TCEQ INTERNAL CONTROL NO. D-10292024-053

**PETITION.** GRBK Edgewood, LLC, (Petitioner) filed a petition for creation of Seven Springs Municipal Utility District of Collin County (District) with the Texas Commission on Environmental Quality (TCEQ). The petition was filed pursuant to Article XVI, §59 of the Constitution of the State of Texas; Chapters 49 and 54 of the Texas Water Code; 30 Texas Administrative Code Chapter 293; and the procedural rules of the TCEQ.

The petition states that: (1) the Petitioner holds title to a majority in value of the land to be included in the proposed District; (2) there are no lienholders on the property to be included in the proposed District (3) the proposed District will contain approximately 405.654 acres located within Collin County, Texas; and (4) none of the land within the proposed District is within the corporate limits or extraterritorial jurisdiction of any city.

The territory to be included in the proposed District is depicted in the vicinity map designated as Exhibit "A", which is attached to this document.

The petition further states that the proposed District will: (1) construct, maintain and operate a waterworks system, including to purchase and sale of water, for domestic and commercial purposes; (2) construct, maintain and operate a sanitary wastewater collection, treatment and disposal system, for domestic and commercial purposes; (3) construct, install, maintain, purchase and operate drainage and roadway facilities and improvements ;and (4) construct, install, maintain, purchase and operate facilities, systems, plants and enterprises such additional facilities as shall be consonant with the purposes for which the proposed District is created.

According to the petition, a preliminary investigation has been made to determine the cost of the project, and it is estimated by the Petitioners that the cost of said project will be approximately $83,730,000 ($63,620,000 for water, wastewater, and drainage plus $20,110,000 for roads).

**CONTESTED CASE HEARING.** The TCEQ may grant a contested case hearing on this petition if a written hearing request is filed within 30 days after the newspaper publication of this notice.

To request a contested case hearing, you must submit the following: (1) your name (or for a group or association, an official representative), mailing address, daytime phone number, and fax number, if any; (2) the name of the Petitioners and the TCEQ Internal Control Number; (3) the statement "I/we request a contested case hearing"; (4) a brief description of how you would be affected by the petition in a way not common to the general public; and (5) the location of your property relative to the proposed District's boundaries. You may also submit your proposed adjustments to the petition which would satisfy your concerns. Requests for a contested case hearing must be submitted in writing to the Office of the Chief Clerk at the address provided in the information section below.

The Executive Director may approve the petition unless a written request for a contested case hearing is filed within 30 days after the newspaper publication of this notice. If a hearing request is filed, the Executive Director will not approve the petition and will forward the petition and hearing request to the TCEQ Commissioners for their consideration at a scheduled Commission meeting. If a contested case hearing is held, it will be a legal proceeding similar to a civil trial in state district court.

**INFORMATION.** Written hearing requests should be submitted to the Office of the Chief Clerk, MC-105, TCEQ, P.O. Box 13087, Austin, TX 78711-3087. For information concerning the hearing process, please contact the Public Interest Counsel, MC-103, at the same address. General information regarding TCEQ can be found at our web site http://www.tceq.texas.gov/.

Issued: December 4, 2024





Seven Springs Municipal Utility District
General Vicinity Map

Legend:

District Boundary

Major Roads

County Border

Project Name:
Seven Springs MUD Creation
Project Number:
0685-002
Date:
September 2024

0    3,000    6,000
Feet

JONES - HEROY & ASSOCIATES, INC.

13915 N. Mopac Expy      Office: (512) 989-2200
Suite 200               Fax: (512) 989-2213
Austin, Texas 78728     TBPE Reg. Firm F-006320

# TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

THE STATE OF TEXAS
COUNTY OF TRAVIS
I HEREBY CERTIFY THAT THIS IS A TRUE AND CORRECT COPY OF A TEXAS COMMISSION ON ENVIRONMENTAL QUALITY DOCUMENT, WHICH IS FILED IN THE PERMANENT RECORDS

FEB 27 2025

OF THE COMMISSION. GIVEN UNDER MY HAND AND THE SEAL OF OFFICE ON
Laurie Gharis
LAURIE GHARIS, CHIEF CLERK
TEXAS COMMISSION ON ENVIRONMENTAL QUALITY



### AN ORDER GRANTING THE PETITION FOR CREATION OF
### SEVEN SPRINGS MUNICIPAL UTILITY DISTRICT OF COLLIN COUNTY
### AND APPOINTING TEMPORARY DIRECTORS

A petition by GRBK Edgewood LLC, a Texas limited liability company (Petitioner) was presented to the Executive Director of the Texas Commission on Environmental Quality (TCEQ) for approval of the creation of Seven Springs Municipal Utility District of Collin County (District) pursuant to Article XVI, Section 59 of the TEXAS CONSTITUTION and TEX. WATER CODE Chapters 49 and 54.

The TCEQ, after having considered the petition, application material, and memorandum from the Executive Director dated February 6, 2025 (Memorandum), attached as Exhibit "B," finds that the petition for creation should be approved.

The TCEQ finds that the creation of the proposed District as set out in the application is feasible, practicable, and necessary, and would be a benefit to the land to be included in the proposed District.

The TCEQ further finds that the proposed District and its system and subsequent development within the proposed District will not have an unreasonable effect on land elevation, subsidence, groundwater level within the region, recharge capability of a groundwater source, natural runoff rates and drainage, water quality, or total tax assessments on all land located within the proposed District.

All of the land and property proposed may properly be included within the proposed District.

All statutory and regulatory requirements for creation of Seven Springs Municipal Utility District of Collin County have been fulfilled in accordance with TEX. WATER CODE § 54.021 and 30 TEX. ADMIN. CODE §§ 293.11-293.12.

NOW, THEREFORE, BE IT ORDERED BY THE TEXAS COMMISSION ON ENVIRONMENTAL QUALITY THAT:

1. The petition for the creation of Seven Springs Municipal Utility District of Collin County is hereby granted.

2. The District is created under the terms and conditions of Article XVI, Section 59 of the TEXAS CONSTITUTION and TEX. WATER CODE Chapters 49 and 54.

3. The District shall have, and shall be subject to, all of the rights, duties, powers, privileges, authority, and functions conferred and imposed by the TCEQ and the general laws of the State of Texas relating to municipal utility districts, including road powers under TEX. WATER CODE § 54.234, subject to the requirements of the TCEQ and the general laws of the State of Texas relating to the exercise of such powers.

Page 9165

4.	The District shall be composed of the area situated in Collin County, Texas and wholly outside of the corporate limits and the extraterritorial jurisdiction of any city, as described by metes and bounds in Exhibit "A" attached hereto and incorporated herein for all purposes.

5.	The Memorandum dated February 6, 2025, attached as Exhibit "B," is hereby incorporated as part of this Order.

6.	The persons listed in Recommendation No. 4 of the Memorandum are hereby named and appointed as temporary directors and shall, as soon as practicable after the date of entry of this Order, execute their official bonds and take their official oaths of office. All such bonds shall be approved by the Board of Directors of the District, and each bond and oath shall be filed with the District and retained in its records.

7.	This Order shall in no event be construed as an approval of any proposed agreements or of any particular items in any documents provided in support of the petition for creation, nor as a commitment or requirement of the TCEQ in the future to approve or disapprove any particular items or agreements in future applications submitted by the District for TCEQ consideration.

8.	The Chief Clerk of the TCEQ shall forward a copy of this Order to all affected persons.

9.	If any provision, sentence, clause, or phrase of this Order is for any reason held to be invalid, the invalidity of any portion shall not affect the validity of the remaining portions of the Order.

Issue Date: **February 21, 2025**

_____
For the Commission



2

**TRACT 1**

BEING A 355.651 ACRE TRACT OF LAND SITUATED IN THE JAMES R. SAVAGE SURVEY, ABSTRACT NO. 845, COLLIN COUNTY, TEXAS, AND BEING ALL OF A 355.651 ACRE TRACT OF LAND, CONVEYED AS "TRACT 1", TO GRBK EDGEWOOD LLC, AS RECORDED IN COUNTY CLERK'S FILE NO. 2024000029991, OFFICIAL PUBLIC RECORDS, COLLIN COUNTY, TEXAS. SAID 355.651 ACRE TRACT, WITH BEARING BASIS BEING GRID NORTH, TEXAS STATE PLANE COORDINATES, NORTH CENTRAL ZONE NAD83, DETERMINED BY GPS OBSERVATIONS UTILIZING THE ALLTERRA RTKNET AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

**BEGINNING** AT A 1/2 INCH IRON ROD FOUND FOR THE WESTERN MOST NORTHWEST CORNER OF SAID 355.651 ACRE TRACT AND THE COMMON SOUTHWEST CORNER OF A 25.513 ACRE TRACT OF LAND CONVEYED TO MICHAEL DRUE FRANKLIN AS RECORDED IN COUNTY CLERK'S FILE NO. 20160421000482270, OFFICIAL PUBLIC RECORDS, COLLIN COUNTY, TEXAS. SAID POINT BEING ON THE EAST LINE OF A 90.85 ACRE TRACT OF LAND CONVEYED AS "TRACT II" TO JOAN SPECK RAMSEY AND TONY LYNN SPECK, AS RECORDED IN VOLUME 4065, PAGE 1397 AND COUNTY CLERK'S FILE NO. 97-0109126, OFFICIAL PUBLIC RECORDS COLLIN COUNTY, TEXAS;

THENCE, ALONG A NORTHERLY LINE OF SAID 355.651 ACRE TRACT AND THE SOUTH LINE OF SAID 25.513 ACRE TRACT, THE FOLLOWING COURSES AND DISTANCES:

NORTH 89 DEGREES 32 MINUTES 50 SECONDS EAST, A DISTANCE OF 5.14 FEET TO A 1/2 INCH IRON ROD FOUND FOR CORNER;

SOUTH 73 DEGREES 57 MINUTES 46 SECONDS EAST, A DISTANCE OF 550.54 FEET TO A POINT FOR CORNER;

SOUTH 73 DEGREES 49 MINUTES 57 SECONDS EAST, OVER AND ACROSS THE REMAINDER OF A 101 ACRE TRACT OF LAND CONVEYED TO JIMMY DON VANHOOZER AS RECORDED IN COUNTY CLERK'S FILE NO. 2005-0060559 AND VOLUME 5914, PAGE 99, OFFICIAL PUBLIC RECORDS, COLLIN COUNTY, TEXAS A DISTANCE OF 924.80 FEET TO A POINT FOR CORNER;

THENCE, CONTINUING ALONG A NORTHERLY LINE OF SAID 355.651 ACRE TRACT AND OVER AND ACROSS SAID 101 ACRE TRACT, THE FOLLOWING COURSES AND DISTANCES:

S:\NTX-LAND\0394\200SURVEY\230 Legal Descriptions\0394EX02.docx
Page 1 of 20

SOUTH 02 DEGREES 02 MINUTES 14 SECONDS EAST, A DISTANCE OF 30.33 FEET TO A POINT FOR CORNER;

NORTH 73 DEGREES 05 MINUTES 43 SECONDS EAST, A DISTANCE OF 28.13 FEET TO A POINT FOR CORNER;

SOUTH 68 DEGREES 05 MINUTES 06 SECONDS EAST, A DISTANCE OF 20.42 FEET TO A POINT FOR CORNER;

SOUTH 34 DEGREES 16 MINUTES 16 SECONDS EAST, A DISTANCE OF 67.88 FEET TO A POINT FOR CORNER;

NORTH 67 DEGREES 17 MINUTES 25 SECONDS EAST, A DISTANCE OF 41.35 FEET TO A POINT FOR CORNER;

SOUTH 70 DEGREES 15 MINUTES 27 SECONDS EAST, A DISTANCE OF 48.23 FEET TO A POINT FOR CORNER;

SOUTH 81 DEGREES 30 MINUTES 43 SECONDS EAST, A DISTANCE OF 38.98 FEET TO A POINT FOR AN INTERIOR ELL CORNER OF SAID 355.651 ACRE TRACT;

THENCE, NORTH 01 DEGREES 11 MINUTES 38 SECONDS EAST, ALONG A WESTERLY LINE OF SAID 355.651 ACRE TRACT A DISTANCE OF 1713.70 FEET TO A POINT FOR THE NORTHWEST CORNER OF SAID 355.651 ACRE TRACT. SAID POINT BEING ON THE SOUTH LINE OF A 33.978 ACRE TRACT OF LAND CONVEYED TO C. KENT ADAMS, AS RECORDED IN COUNTY CLERK'S FILE NO. 20060613000811920, OFFICIAL PUBLIC RECORDS, COLLIN COUNTY, TEXAS. SAID POINT BEING WITHIN COUNTY ROAD NO. 177 (A VARIABLE WIDTH RIGHT-OF-WAY);

THENCE, NORTH 89 DEGREES 45 MINUTES 08 SECONDS EAST, ALONG THE NORTH LINE OF SAID 355.651 ACRE TRACT, THE COMMON SOUTH LINE OF SAID 33.978 ACRE TRACT AND WITH SAID COUNTY ROAD NO. 177, A DISTANCE OF 362.52 FEET TO 1/2" IRON ROD FOUND FOR THE SOUTHEAST CORNER OF SAID 33.978 ACRE TRACT AND THE COMMON SOUTHWEST CORNER OF AN 11.297 ACRE TRACT OF LAND CONVEYED TO CLAYTON RUDY HAUK AND LINDSAY KIMBALL HAUK, AS RECORDED IN COUNTY CLERK'S FILE NO. 20210104000001430, OFFICIAL PUBLIC RECORDS, COLLIN COUNTY, TEXAS;

THENCE, NORTH 88 DEGREES 26 MINUTES 22 SECONDS EAST, CONTINUING ALONG THE NORTH LINE OF SAID 355.651 ACRE TRACT, THE COMMON SOUTH LINE OF SAID 11.297 ACRE TRACT, THE COMMON SOUTH LINE OF TURBYFILL ADDITION, AN ADDITION TO THE COUNTY OF COLLIN, AS RECORDED IN COUNTY CLERK'S FILE NO. 20200603010001920, OFFICIAL PUBLIC RECORDS, COLLIN COUNTY, TEXAS AND WITH SAID COUNTY ROAD NO. 177, A DISTANCE OF 877.85 FEET TO A POINT FOR THE NORTHWEST CORNER OF SAID 355.651

ACRE TRACT AND THE COMMON NORTHWEST CORNER OF A 23.90 ACRE TRACT OF LAND CONVEYED TO KELLIE SUE FIERRO, AS RECORDED IN COUNTY CLERK'S FILE NO. 2003-0050069 AND VOLUME 5378, PAGE 4922, OFFICIAL PUBLIC RECORDS, COLLIN COUNTY, TEXAS;

THENCE, ALONG THE EAST LINE OF SAID 355.651 ACRE TRACT AND THE COMMON WEST LINE OF SAID 23.90 ACRE TRACT, THE FOLLOWING COURSES AND DISTANCES:

SOUTH 00 DEGREES 04 MINUTES 41 SECONDS EAST, A DISTANCE OF 619.56 FEET TO A POINT FOR CORNER;

SOUTH 00 DEGREES 04 MINUTES 33 SECONDS WEST, ALONG THE EAST LINE OF A 8.453 ACRE TRACT OF LAND CONVEYED AS "TRACT ONE" TO JUDITH M. HANSON, TRUSTEE OF THE JUDITH M. HANSON LIVING TRUST, AS RECORDED IN COUNTY CLERK'S FILE NO. 20111109001212590, OFFICIAL PUBLIC RECORDS, COLLIN COUNTY, TEXAS, A DISTANCE OF 637.02 FEET TO A 5/8 INCH IRON ROD FOUND FOR CORNER;

THENCE, SOUTH 00 DEGREES 32 MINUTES 49 SECONDS EAST, ALONG THE EAST LINE OF SAID 355.651 ACRE TRACT AND THE COMMON WEST LINE OF SAID 8.453 ACRE TRACT, A DISTANCE OF 220.75 FEET TO A POINT FOR THE SOUTHWEST CORNER OF SAID 8.453 ACRE TRACT AND THE COMMON NORTHWEST CORNER OF A 0.844 ACRE TRACT OF LAND CONVEYED AS "TRACT THREE" TO JUDITH M. HANSON, AS RECORDED IN COUNTY CLERK'S FILE NO. 20120307000252180, OFFICIAL PUBLIC RECORDS, COLLIN COUNTY, TEXAS;

THENCE, SOUTH 09 DEGREES 30 MINUTES 21 SECONDS EAST, CONTINUING ALONG THE EAST LINE OF SAID 355.651 ACRE TRACT AND ALONG THE COMMON WEST LINE OF SAID 0.844 ACRE TRACT, A DISTANCE OF 129.13 FEET TO A POINT FOR THE SOUTHWEST CORNER OF SAID 0.844 ACRE TRACT;

THENCE, NORTH 85 DEGREES 11 MINUTES 02 SECONDS EAST, ALONG AN EASTERLY LINE OF SAID 355.651 ACRE TRACT THE COMMON SOUTH LINE OF SAID 0.844 ACRE TRACT, A DISTANCE OF 28.90 FEET TO A POINT FOR AN EXTERIOR ELL CORNER OF SAID 355.651 ACRE TRACT AND THE COMMON NORTHWEST CORNER OF A 26.26 ACRE TRACT OF LAND CONVEYED TO DANIEL DUANE OLSEN AND CHRISTINE LYNN OLSEN, AS RECORDED IN COUNTY CLERK'S FILE NO. 20210708001379340, OFFICIAL PUBLIC RECORDS, COLLIN COUNTY, TEXAS;

THENCE, SOUTH 00 DEGREES 18 MINUTES 59 SECONDS EAST, ALONG THE EAST LINE OF SAID 355.651 ACRE TRACT AND THE COMMON WEST LINE OF SAID 26.26 ACRE TRACT, A DISTANCE OF 725.83 FEET TO A 1/2 INCH IRON ROD FOUND FOR THE SOUTHWEST CORNER OF SAID 26.26 ACRE TRACT AND THE

S:\NTX-LAND\0394\200SURVEY\230 Legal Descriptions\0394EX02.docx
Page 3 of

COMMON NORTHWEST CORNER OF A 13.13 ACRE TRACT OF LAND CONVEYED TO REBECCA SUE LESTER, LOUIS JEAN FLETCHER AND HELEN ELAINE DEFRANCE, AS RECORDED IN COUNTY CLERK'S FILE NO. 20190204000117710, OFFICIAL PUBLIC RECORDS, COLLIN COUNTY, TEXAS;

THENCE, CONTINUING ALONG THE EAST LINE OF SAID 355.651 ACRE TRACT AND THE COMMON WEST LINE OF SAID 13.13 ACRE TRACT, THE FOLLOWING COURSES AND DISTANCES:

SOUTH 01 DEGREES 01 MINUTES 33 SECONDS EAST, A DISTANCE OF 17.65 FEET TO A 1/2 INCH IRON ROD FOUND FOR CORNER;

SOUTH 00 DEGREES 47 MINUTES 17 SECONDS EAST, A DISTANCE OF 121.33 FEET TO A POINT FOR CORNER;

SOUTH 00 DEGREES 00 MINUTES 49 SECONDS EAST, A DISTANCE OF 318.18 FEET TO A 1/2 INCH IRON ROD FOUND FOR THE SOUTHWEST CORNER OF SAID 13.13 ACRE TRACT AND THE COMMON NORTHWEST CORNER OF A 13.13 ACRE TRACT OF LAND CONVEYED TO REBECCA SUE LESTER, LOIS JEAN FLETCHER AND HELEN ELAINE DEFRANCE, AS RECORDED IN COUNTY CLERK'S FILE NO. 20190204000117720, OFFICIAL PUBLIC RECORDS, COLLIN COUNTY, TEXAS;

THENCE, SOUTH 00 DEGREES 04 MINUTES 01 SECONDS EAST, CONTINUING ALONG THE EAST LINE OF SAID 355.651 ACRE TRACT AND THE COMMON WEST LINE OF SAID 13.13 ACRE TRACT, A DISTANCE OF 478.14 FEET TO A 1/2 INCH IRON ROD FOR THE SOUTHWEST CORNER OF SAID 13.13 ACRE TRACT AND THE COMMON NORTHWEST CORNER OF A 26.77 ACRE TRACT OF LAND CONVEYED TO KENNETH W. HENDRIX, AS RECORDED IN COUNTY CLERK'S FILE NO. 96-0019131, OFFICIAL PUBLIC RECORDS, COLLIN COUNTY, TEXAS;

THENCE, CONTINUING ALONG THE EAST LINE OF SAID 355.651 ACRE TRACT AND THE COMMON WEST LINE OF SAID 26.77 ACRE TRACT, THE FOLLOWING COURSES AND DISTANCES:

SOUTH 01 DEGREES 09 MINUTES 25 SECONDS EAST, A DISTANCE OF 265.56 FEET TO A POINT FOR CORNER;

SOUTH 03 DEGREES 19 MINUTES 45 SECONDS EAST, A DISTANCE OF 306.57 FEET TO A POINT FOR AN EXTERIOR ELL CORNER OF SAID 355.651 ACRE TRACT AND THE COMMON NORTHEAST CORNER OF A 73.33 ACRE TRACT OF LAND CONVEYED TO WILLIAM PRESTON STALEY III, AS RECORDED IN COUNTY CLERK'S FILE NO. 2003-0138532 AND VOLUME 5463, PAGE 3530, OFFICIAL PUBLIC RECORDS. COLLIN COUNTY, TEXAS;

THENCE, ALONG A SOUTHERLY LINE OF SAID 355.651 ACRE TRACT AND THE COMMON NORTH LINE OF SAID 73.33 ACRE TRACT, THE FOLLOWING COURSES AND DISTANCES:

SOUTH 89 DEGREES 15 MINUTES 52 SECONDS WEST, A DISTANCE OF 145.26 FEET TO A POINT FOR CORNER;

NORTH 73 DEGREES 10 MINUTES 32 SECONDS WEST, A DISTANCE OF 526.08 FEET TO A POINT FOR AN INTERIOR ELL CORNER OF SAID 355.651 ACRE TRACT AND THE COMMON NORTHWEST CORNER OF SAID 73.33 ACRE TRACT;

THENCE, SOUTH 06 DEGREES 17 MINUTES 09 SECONDS WEST, ALONG A EASTERLY LINE OF SAID 355.651 ACRE TRACT AND THE COMMON WEST LINE OF SAID 73.33 ACRE TRACT, A DISTANCE OF 1623.59 FEET TO A POINT FOR THE SOUTHEAST CORNER OF SAID 355.651 ACRE TRACT, FROM WHICH A 1/2 INCH IRON ROD FOUND BEARS SOUTH 82 DEGREES 10 MINUTES 23 SECONDS WEST, A DISTANCE OF 0.44 FEET;

THENCE, SOUTH 89 DEGREES 26 MINUTES 40 SECONDS WEST, ALONG THE SOUTH LINE OF SAID 355.651 ACRE TRACT, A COMMON NORTH LINE OF SAID 73.33 ACRE TRACT AND THE COMMON NORTH LINE OF A 16.00 ACRE TRACT OF LAND CONVEYED TO DAVID E. GOLDEN AND WIFE JENNIFER L. GOLDEN, AS RECORDED IN COUNTY CLERK'S FILE NO. 92-0056072, OFFICIAL PUBLIC RECORDS, COLLIN COUNTY, TEXAS, A DISTANCE OF 965.79 FEET TO A 1/2 INCH IRON ROD FOUND FOR CORNER;

THENCE, SOUTH 09 DEGREES 08 MINUTES 45 SECONDS WEST, CONTINUING ALONG THE SOUTH LINE OF SAID 355.651 ACRE TRACT AND THE COMMON NORTH LINE OF SAID 16.00 ACRE TRACT, A DISTANCE OF 35.21 FEET TO A POINT FOR CORNER. SAID POINT BEING WITHIN WESTON RIDGE TRAIL (A PRESCRIPTIVE RIGHT-OF-WAY BY USE AND OCCUPATION);

THENCE, NORTH 89 DEGREES 21 MINUTES 47 SECONDS WEST, ALONG SAID COMMON LINES AND WITH SAID WESTON RIDGE TRAIL, A DISTANCE OF 1906.05 FEET TO A POINT FOR CORNER. SAID POINT IN THE NORTH RIGHT-OF-WAY LINE OF COUNTY ROAD NO. 175, (A VARIABLE WIDTH RIGHT-OF-WAY);

THENCE, SOUTH 89 DEGREES 31 MINUTES 51 SECONDS WEST, ALONG THE SOUTH LINE OF SAID 355.651 ACRE TRACT AND THE COMMON NORTH RIGHT-OF-WAY LINE OF SAID COUNTY ROAD NO. 175, A DISTANCE OF 1524.65 FEET TO A MAG NAIL FOUND FOR THE SOUTHWEST CORNER OF SAID 355.651 ACRE TRACT AND THE COMMON SOUTHEAST CORNER OF A 22.43 ACRE TRACT OF LAND CONVEYED TO ARA ESTATES, LLC, AS RECORDED IN COUNTY CLERK'S FILE NO. 2023000039659, OFFICIAL PUBLIC RECORDS, COLLIN COUNTY, TEXAS;

THENCE, NORTH 01 DEGREES 32 MINUTES 04 SECONDS WEST, ALONG THE WEST LINE OF SAID 355.651 ACRE TRACT AND THE COMMON EAST LINE OF SAID 22.43 ACRE TRACT AND THE COMMON EAST LINE OF LITCHFORD HEIGHTS ADDITION, AN ADDITION TO THE COUNTY OF COLLIN, AS RECORDED IN CABINET M ,SLIDE 621, PLAT RECORDS, COLLIN COUNTY, TEXAS, A DISTANCE OF 1166.06 FEET TO A POINT FOR AN EXTERIOR ELL CORNER OF SAID 355.651 ACRE TRACT AND THE COMMON SOUTHWEST CORNER OF LONE STAR RANCH SOUTH, PHASE 1, AN ADDITION TO THE COUNTY OF COLLIN, AS RECORDED IN COUNTY CLERK'S FILE NO. 20210317010000840, OFFICIAL PUBLIC RECORDS, COLLIN COUNTY, TEXAS;

THENCE, NORTH 89 DEGREES 30 MINUTES 58 SECONDS EAST, ALONG A NORTHERLY LINE OF SAID 355.651 ACRE TRACT, THE COMMON SOUTH LINE OF SAID LONE STAR RANCH SOUTH, PHASE 1, THE COMMON SOUTH LINE OF A 5.00 ACRE TRACT OF LAND CONVEYED TO TIMOTHY E. WOODARD AND KIMBERLY A. WOODARD, AS RECORDED IN COUNTY CLERK'S FILE NO. 2023000021582, OFFICIAL PUBLIC RECORDS, COLLIN COUNTY, TEXAS AND THE SOUTH LINE OF A 30.27 ACRE TRACT OF LAND CONVEYED TO DARRELL ASHMANSKAS AND MIN LOU, AS RECORDED IN COUNTY CLERK'S FILE NO. 20210609001162740, OFFICIAL PUBLIC RECORDS, COLLIN COUNTY, TEXAS, A DISTANCE OF 1763.70 FEET TO A 1/2 INCH IRON ROD FOUND FOR AN INTERIOR ELL CORNER OF SAID 355.651 ACRE TRACT AND THE COMMON SOUTHEAST CORNER OF SAID 30.27 ACRE TRACT;

THENCE, NORTH 09 DEGREES 43 MINUTES 01 SECONDS EAST, ALONG THE WEST LINE OF SAID 355.651 ACRE TRACT AND THE COMMON EAST LINE OF SAID 30.27 ACRE TRACT, A DISTANCE OF 730.21 FEET TO A 1/2 INCH IRON ROD FOUND FOR THE NORTHEAST CORNER OF SAID 30.27 ACRE TRACT AND THE COMMON SOUTHEAST CONER OF LONE STAR RANCH, AN ADDITION TO THE COUNTY OF COLLIN, AS RECORDED IN COUNTY CLERK'S FILE NO. 20161207010005180, OFFICIAL PUBLIC RECORDS, COLLIN COUNTY, TEXAS;

THENCE, NORTH 09 DEGREES 57 MINUTES 39 SECONDS EAST, CONTINUING ALONG THE WEST LINE OF SAID 355.651 ACRE TRACT AND THE COMMON EAST LINE OF SAID LONE STAR RANCH, A DISTANCE OF 1761.55 FEET TO A 1/2 INCH IRON ROD FOUND FOR THE NORTHEAST CORNER OF SAID LONE STAR RANCH AND THE COMMON SOUTHWEST CORNER OF AFORESAID 90.85 ACRE TRACT;

THENCE, NORTH 09 DEGREES 57 MINUTES 32 SECONDS EAST, CONTINUING ALONG THE WEST LINE OF SAID 355.651 ACRE TRACT AND THE COMMON EAST LINE OF SAID 90.85 ACRE TRACT, A DISTANCE OF 468.25 FEET TO THE **POINT OF BEGINNING** AND CONTAINING A CALCULATED AREA OF 15,492,179 SQUARE FEET, OR 355.651 ACRES OF LAND.

S:\NTX-LAND\0394\200SURVEY\230 Legal Descriptions\0394EX02.docx
Page 6 of 7

**TRACT 2**

BEING A 50.003 ACRE TRACT OF LAND SITUATED IN THE JAMES R. SAVAGE SURVEY, ABSTRACT NO. 845, COLLIN COUNTY, TEXAS, AND BEING ALL OF A 50.003 ACRE TRACT OF LAND, CONVEYED AS "TRACT 2", TO GRBK EDGEWOOD LLC, AS RECORDED IN COUNTY CLERK'S FILE NO. 2024000029991, OFFICIAL PUBLIC RECORDS, COLLIN COUNTY, TEXAS. SAID 50.003 ACRE TRACT, WITH BEARING BASIS BEING GRID NORTH, TEXAS STATE PLANE COORDINATES, NORTH CENTRAL ZONE NAD83, DETERMINED BY GPS OBSERVATIONS UTILIZING THE ALLTERRA RTKNET AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

**BEGNNING** AT A 5/8 INCH IRON ROD WITH PLASTIC CAP STAMPED "BRENNAM 5560" FOUND FOR THE NORTHEAST CORNER OF SAID 50.003 ACRE TRACT. SAID POINT BEING IN THE SOUTH RIGHT-OF-WAY LINE OF COUNTY ROAD NO. 175 (A VARIABLE WIDTH RIGHT-OF-WAY);

THENCE, SOUTH 00 DEGREES 26 MINUTES 48 SECONDS EAST, ALONG THE EAST LINE OF SAID 50.003 ACRE TRACT, THE COMMON WEST LINE OF A 16.00 ACRE TRACT OF LAND CONVEYED TO DAVID E. GOLDEN AND WIFE JENNIFER L. GOLDEN, AS RECORDED IN COUNTY CLERK'S FILE NO. 92-0056072, OFFICIAL PUBLIC RECORDS, COLLIN COUNTY, TEXAS, THE COMMON WEST LINE OF A 15.26 ACRE TRACT OF LAND CONVEYED TO AMIR JABIN AND GHADA ZAATARI, AS RECORDED IN COUNTY CLERK'S FILE NO. 20110419000405870, OFFICIAL PUBLIC RECORDS, COLLIN COUNTY, TEXAS, THE COMMON WEST LINE OF A 37.26 ACRE TRACT OF LAND CONVEYED AS "TRACT 4" TO JUANITA L. HAYES, AS RECORDED IN COUNTY CLERK'S FILE NO. 2023000003369, OFFICIAL PUBLIC RECORDS, COLLIN COUNTY, TEXAS AND WITH SAID COUNTY ROAD NO. 175, A DISTANCE OF 1079.16 FEET TO A POINT FOR CORNER;

THENCE, SOUTH 00 DEGREES 34 MINUTES 25 SECONDS EAST, CONTINUING ALONG THE EAST LINE OF SAID 50.003 ACRE TRACT AND THE COMMON WEST LINE OF SAID 37.26 ACRE TRACT AND WITH SAID COUNTY ROAD NO. 175 A DISTANCE OF 475.37 FEET TO A 5/8 INCH IRON ROD WITH PLASTIC CAP STAMPED "BRENNAM 5560" FOUND FOR THE SOUTHEAST CORNER OF SAID 50.003 ACRE TRACT AND THE COMMON NORTHEAST CORNER OF A 100 ACRE TRACT OF LAND CONVEYED TO PAUL LEHNER AND VIRGINIA R. LEHNER, TRUSTEES OF THE LEHNER FAMILY REVOCABLE TRUST, AS RECORDED IN COUNTY CLERK'S FILE NO. 20200928001659370, OFFICIAL PUBLIC RECORDS, COLLIN COUNTY, TEXAS;



S:\TX-LAND\0394\200SURVEY\230 Legal Descriptions\0394EX02.docx
Page 4 of 11

THENCE, SOUTH 89 DEGREES 53 MINUTES 56 SECONDS WEST, ALONG THE SOUTH LINE OF SAID 50.003 ACRE TRACT AND THE COMMON NORTH LINE OF SAID 100 ACRE TRACT, A DISTANCE OF 1401.31 FEET TO A 1/2 INCH SQUARE IRON PIPE FOUND FOR THE SOUTHWEST CORNER OF SAID 50.003 ACRE TRACT AND THE COMMON SOUTHEAST CORNER OF A 42.945 ACRE TRACT OF LAND CONVEYED TO CARL C. RASOR OR ANGIE A. RASOR, TRUSTEES OF THE RASOR LIVING TRUST, AS RECORDED IN COUNTY CLERK'S FILE NO. 20090331000368880, OFFICIAL PUBLIC RECORDS, COLLIN COUNTY, TEXAS;

THENCE, NORTH 00 DEGREES 30 MINUTES 34 SECONDS WEST, ALONG THE WEST LINE OF SAID 50.003 ACRE TRACT AND THE COMMON EAST LINE OF SAID 42.945 ACRE TRACT, A DISTANCE OF 1554.31 FEET TO A 5/8 INCH IRON ROD WITH PLASTIC CAP STAMPED "BRENNAM 5560" FOUND FOR THE NORTHWEST CORNER OF SAID 50.003 ACRE TRACT AND THE COMMON NORTHEAST CORNER OF SAID 42.945 ACRE TRACT. SAID POINT BEING IN THE SOUTH RIGHT-OF-WAY LINE OF AFORESAID COUNTY ROAD NO. 175;

THENCE, NORTH 89 DEGREES 53 MINUTES 22 SECONDS EAST, ALONG THE NORTH LINE OF SAID 50.003 ACRE TRACT AND THE COMMON SOUTH RIGHT-OF-WAY LINE OF SAID COUNTY ROAD NO. 175, A DISTANCE OF 1401.96 FEET TO THE **POINT OF BEGINNING** AND CONTAINING A CALCULATED AREA OF 2,178,118 SQUARE FEET OR 50.003 ACRES OF LAND.

A PARCEL PLAT OF EQUAL DATE HEREWITH ACCOMPANIES THIS PROPERTY DESCRIPTION.

Chris Matteo, R.P.L.S.                                             08/27/2024
Registered Professional Land Surveyor
Texas Registration No. 6501
LJA Surveying, Inc.
6060 North Central Expressway, Suite 400
Dallas, Texas 75206
469-484-0778

T.B.P.E.L.S. Firm No. 10194382

S:\NTX-LAND\0394\200SURVEY\230 Legal Descriptions\0394EX02.docx

# Texas Commission on Environmental Quality

**To:**    Justin P. Taack, Manager  *for*        **Date:**    February 6, 2025
Districts Section    *2/6/2025*

**Thru:**   Michael Briscoe, Team Lead
Districts Creation Review Team

**From:**   Jacob Houston
Districts Creation Review Team

**Subject:**  Petition by GRBK Edgewood LLC for Creation of Seven Springs Municipal Utility
District of Collin County; Pursuant to Texas Water Code Chapters 49 and 54.
TCEQ Internal Control No. D-10292024-053  (TC)
CN: 606321651        RN: 112076773

## A. GENERAL INFORMATION

The Texas Commission on Environmental Quality (TCEQ) received a petition within the
application requesting approval for the creation of Seven Springs Municipal Utility District of
Collin County (District).  The petition was signed by Bobby Samuel, Vice President of GRBK
Edgewood LLC, a Texas limited liability company (Petitioner). The petition states that the
Petitioner holds title to a majority in value of the land in the proposed District. A separate
affidavit regarding no lienholders was provided stating that there are no lienholders on the
land to be included in the proposed District.

The District is proposed to be created and organized according to the terms and provisions of
Article XVI, Section 59 of the Texas Constitution, and Chapters 49 and 54 of the Texas Water
Code (TWC).

Location and Access

The proposed District is located in northern Collin County (County), approximately seven miles
west of the City of Anna, 0.5 miles north of the City of Weston, and generally northeast of the
City of Celina. The proposed District is south of County Road (CR) 177 and east of CR 176, with
a contiguous tract of land south of CR 175. The proposed District is located wholly outside the
corporate limits or extraterritorial jurisdiction of any city, town, or village. Access to the
proposed District will be provided by CR 175, CR 177, Weston Ridge Trail, and Lone Star Road.

Metes and Bounds Description

The proposed District contains two tracts of land totaling 405.654 acres. The metes and bounds
description of the proposed District has been checked by TCEQ's staff and has been found to
form an acceptable closure.



Exhibit "B"

Justin P. Taack, Manager
Page 2
February 6, 2025

## City Consent

The proposed District is located outside the corporate limits and extraterritorial jurisdiction of any city, town, or village. Therefore, requirements of Texas Local Government Code Section 42.042 and TWC Section 54.016 are not applicable.

## County Notification

In accordance with TWC Section 54.0161, a certified letter, dated November 18, 2024, was sent to the Commissioners Court of Collin County which provided notice of the proposed District's pending creation application and provided them an opportunity to make their recommendations. To date, the county has not responded to this notification.

## Statements of Filing Petition

Evidence of filing a copy of the petition with the Collin County Clerks' office, the TCEQ's Dallas/Fort Worth regional office, the Texas state representative, and the Texas state senator was included in the application.

## Type of Project

The proposed District will be considered a "developer project" as defined by 30 Texas Administrative Code (30 TAC) Section 293.44(a). Therefore, developer cost participation in accordance with 30 TAC Section 293.47 will be required.

## Developer Qualifications

Application material indicates that GRBK Edgewood LLC will be the developer of the proposed District. GRBK Edgewood LLC has one sole member, Green Brick Partners, Inc., a Delaware corporation (GRBK). GRBK is the third largest homebuilder in Dallas-Fort Worth. GRBK owns five subsidiary homebuilders in Texas (CB JENI Homes, Normandy Homes, Southgate Homes, Trophy Signature Homes, and a 90% interest in Centre Living Homes), as well as a controlling interest in a homebuilder in Atlanta, Georgia (The Providence Group) and 80% interest in a homebuilder in Port St. Lucie, Florida (GHO Homes). GRBK delivered 821 new homes in 2024 and 761 new homes in 2023.

## Certificate of Ownership

By signed certificate dated October 1, 2024, the Collin Central Appraisal District has certified that the appraisal rolls indicate that as of September 25, 2024, the Petitioner is the owner of a majority in value of the land in the proposed District.

## Temporary Director Affidavits

The TCEQ has received affidavits for consideration of the appointment of the following five temporary directors:

| | | |
|---|---|---|
| Spencer Weber | Joey Tyner | Brittan Chrisman |
| Christina Adamson | Ryder Byrne | |

Each of the above persons named is qualified, as required by 30 TAC Section 293.32(a), to serve as a temporary director of the proposed District as each (1) is at least 18 years old, (2) is a resident of the State of Texas, and (3) either owns land subject to taxation within the proposed District or is a qualified voter within the proposed District. Additionally, as required by TWC Section 54.022, the majority are residents of the county in which the proposed District is located, a county adjacent to the county in which the proposed District is located, or if the proposed District is located in a county that is in a metropolitan statistical area designated by the United States Office of Management and Budget or its successor agency, a county in the same metropolitan statistical area as the county in which the proposed District is located.

## Notice Requirements

Proper notice of the application was published on December 12 and December 19, 2024, in the *Collin County Commercial Record*, a newspaper regularly published or circulated in Collin County, the county in which the district is proposed to be located. Proper notice of the application was posted on December 12, 2024, at the place for posting legal notices at the Collin County Courthouse. Accordingly, the notice requirements of 30 TAC Section 293.12(b) have been satisfied. The opportunity for the public to request a contested case hearing (comment period) expired January 21, 2025.

## B. ENGINEERING ANALYSIS

The creation engineering report indicates the following:

### Availability of Comparable Service

The proposed District is located in the water Certificate of Convenience and Necessity (CCN) of Mustang Special Utility District (SUD). Mustang SUD will provide retail water services to all areas of the proposed District. No other comparable water services are available.

The proposed District is not within the sewer CCN of any entity. A wastewater collection system and wastewater treatment plant will be constructed and operated to serve the entire proposed District. The proposed District will provide retail wastewater service within its boundaries. No other comparable wastewater services are available in the area.

### Water Supply and Distribution Improvements

Per the engineering report, it is estimated that the District will contain 1,339 equivalent single-family connections (ESFCs) at ultimate development. Mustang SUD will provide retail water services to all areas of the proposed District as needed in the future. Mustang SUD purchases treated surface water from the Upper Trinity Regional Water District (UTRWD). UTRWD draws surface water from Lewisville Lake, Ray Roberts Lake, and Jim Chapman Lake. The proposed District will finance the water distribution system serving its residents. The homebuilders or proposed District will be required to pay connection fees to Mustang SUD for each water service connection. All water facilities will be designed in accordance with the TCEQ and the County.

The proposed water distribution system will consist of an offsite line connecting to Mustang water system, plus a network of internal 8-inch and 12-inch main lines providing service to all lots in the proposed District. The design of the proposed water supply and distribution system will be based on a projection of the water demand conditions based on service

Justin P. Taack, Manager
Page 4
February 6, 2025

connections, and the pressure at which it must be supplied. The proposed water supply and distribution system design will meet or exceed the minimum standards established by TCEQ.

## Wastewater Collection and Treatment Improvements

It is estimated that the District will contain 1,339 ESFCs at ultimate development, requiring 401,700 gallons per day of wastewater treatment capacity, using 300 gallons per day per connection. The proposed District is not within the wastewater CCN of any entity. A wastewater collection system and wastewater treatment plant will be constructed and operated to serve the entire proposed District. The proposed District will provide retail wastewater service within the proposed District's boundaries. All wastewater facilities will be designed in accordance with the TCEQ and the County.

The proposed District's wastewater collection system will consist of a network of gravity wastewater collection lines, plus a lift station and force main, which will collect and transport flow to the wastewater treatment plant. The wastewater collection and treatment system will be designed to meet or exceed the minimum state requirements for the land uses and development plan.

## Storm Water and Drainage Improvements

Storm water runoff within the proposed District will be collected in channels then to flumes or inlets which will convey the flows to a detention pond. Storm water collected from the proposed storm wastewater and drainage system will typically pass through and be held in detention ponds before discharging into the tributaries of the East Fork of the Trinity River.

The proposed storm wastewater and drainage system will be designed to accommodate 2-year and 100-year storm events as required for the land uses and development plan. According to the preliminary engineering report, detention ponds will be designed to prevent impacts to any downstream landowners. The design of the stormwater and drainage improvements will be designed and constructed in accordance with applicable ordinances and rules adopted by the County and TCEQ.

## Road Improvements

The proposed District will have five points of access from CR 177, Weston Ridge Trail, Lone Star Road, and two from CR 175. The proposed District intends to use bonds to fund the main entrances and local streets. The developer will construct a network of collector roads and local streets to provide access to the areas of the proposed District depending on land use. The roads will be designed in accordance with County standards.

## Floodplain

According to Federal Emergency Management Agency Flood Insurance Rate Map Nos. 48085C0045J and 48085C0135J, dated June 2, 2009, none of the proposed District lies within the 100-year floodplain.

## Topography/Land Elevation

The majority of the natural drainage is in a southeasterly direction collecting in tributaries of the East Fork of the Trinity River. Existing elevations within the proposed District range from approximately 770 feet above mean sea level (msl) in the southern portion to approximately 800 feet above msl in the eastern portion.

Justin P. Taack, Manager
Page 5
February 6, 2025

The developer has no plans to significantly alter land elevations or the natural topography on land in the proposed District. Elevations may be lowered or raised as needed to provide positive drainage. Therefore, development of the proposed District is not expected to have an unreasonable effect on land elevation.

## Subsidence

The proposed District will receive its water from Mustang SUD. Mustang SUD purchases treated surface water from UTRWD which is sourced from Lewisville Lake, Ray Roberts Lake, and Jim Chapman Lake. Therefore, according to the preliminary engineering report, the proposed District is expected to have no unreasonable effect on subsidence.

## Groundwater Levels/Recharge

The proposed District will receive treated surface water from Mustang SUD and is not located within a regulated recharge zone. Runoff from the proposed District will generally follow existing topographical flow patterns, and the project will include detention ponds, which will drain to existing streams consistent with existing drainage patterns. Therefore, according to the preliminary engineering report, development of the proposed District is expected to have no unreasonable effect on ground water levels or aquifer recharge.

## Natural Run-off and Drainage

Runoff from the proposed District will be collected in detention ponds before outfalling into the tributaries of the East Fork of the Trinity River. All drainage facility construction within the proposed District will be required to obtain plan approval from the County and will comply with County or other applicable jurisdictional regulations. Development of the proposed District will increase the natural runoff rates when compared to the present undeveloped state of the land; however, the detention ponds will be designed to mitigate any effect on downstream runoff rates. Therefore, according to preliminary engineering report, the proposed District is expected to have no unreasonable effect on runoff rates and drainage.

## Water Quality

All construction within the proposed District will include erosion control measures which comply with the Strom Water Pollution Prevention Plans overseen by TCEQ. All wastewater will be collected and treated in a wastewater treatment facility that is permitted and approved by TCEQ, which should minimize the effects on surface water quality. All drainage projects will be designed to comply with all applicable Federal, State, and local regulations, including regulations related to storm water quality. Therefore, according to the preliminary engineering report, the proposed District is expected to have no unreasonable effect on water quality.

## Dam Safety Analysis

The TCEQ Dam Safety Program personnel reviewed the location of the District and confirmed by letter dated September 30, 2024, that there appear to be a few small ponds within the proposed District's boundaries. The ponds will need to be evaluated to determine if they will remain or be removed. If they will remain and are classified as dams in TCEQ jurisdiction, they will need to be evaluated for hydraulic adequacy and hazard classification.



## C. SUMMARY OF COSTS

### WATER, WASTEWATER, AND DRAINAGE

| Construction Costs | | District Share [1] |
|---|---|---|
| A. Developer Contribution Items | | |
| 1. Water, Wastewater, and Drainage | $ | 25,787,068 |
| 2. Erosion Control | | 1,323,298 |
| 3. Contingencies (15% of Item Nos. 1-2) | | 4,066,555 |
| 4. Engineering (10% of Item Nos. 1-2) | | 2,711,036 |
| Total Developer Contribution Items | $ | 33,887,957 |
| B. District Items | | |
| 1. Offsite Water | $ | 227,500 |
| 2. Wastewater Treatment Plant | | 12,024,000 |
| 3. Contingencies (15% of Item Nos. 1-2) | | 1,837,725 |
| 4. Engineering (10% of Item Nos. 1-2) | | 1,225,150 |
| Total District Items | $ | 15,314,375 |
| | | |
| TOTAL CONSTRUCTION COSTS (77.34% of BIR) | $ | 49,202,332 |

| Non-Construction Costs | | |
|---|---|---|
| A. Legal Fees | $ | 1,908,600 |
| B. Fiscal Agent Fees | | 1,590,500 |
| C. Interest Costs | | |
| 1. Capitalized Interest (1 years @ 5%) | | 3,181,000 |
| 2. Developer Interest (2 years @ 5% of Construction Costs) | | 4,920,233 [2] |
| D. Bond Discount (3%) | | 1,908,600 |
| E. Bond Issuance Expenses | | 236,065 |
| F. Bond Application Report Costs | | 200,000 |
| G. Creation/Organization | | 100,000 |
| H. Administration and Operations | | 150,000 |
| I. Attorney General Fee (0.1%) | | 63,620 |
| J. TCEQ Bond Issuance Fee (0.25%) | | 159,050 |
| TOTAL NON-CONSTRUCTION COSTS | $ | 14,417,668 |
| | | |
| **TOTAL W, WW, & D BOND ISSUE REQUIREMENT** | $ | **63,620,000** |

Notes:
(1) Assumes 100% funding of anticipated developer contribution items, where applicable.
(2) Based on developer advancing funds approximately two years prior to reimbursement.

Eligibility of costs for District funding and 30% developer contribution requirements will be determined in accordance with TCEQ rules in effect at the time bond applications are reviewed.

## ROAD IMPROVEMENTS

| Construction Costs | | District Share [1] |
|---|---|---|
| A. Roads | $ | 12,591,462 |
| B. Contingencies (15% of Item No. 1) | | 1,888,720 |
| C. Engineering (10% of Item No. 1) | | 1,259,146 |
| Total Construction Costs | $ | 15,739,328 |
| | | |
| TOTAL CONSTRUCTION COSTS (78.27% of BIR) | $ | 15,739,328 |

| Non-Construction Costs | | |
|---|---|---|
| A. Legal Fees | $ | 603,300 |
| B. Fiscal Agent Fees | | 502,750 |
| C. Interest Costs | | |
| 1. Capitalized Interest (1 years @ 5%) | | 1,005,500 |
| 2. Developer Interest (2 years @ 5% of Construction Costs) | | 1,573,933 [2] |
| D. Bond Discount (3%) | | 603,300 |
| E. Bond Issuance Costs | | 51,779 |
| F. Bond Engineering Costs | | 10,000 |
| G. Attorney General Fee (0.1%) | | 20,110 |
| TOTAL NON-CONSTRUCTION COSTS | $ | 4,370,672 |
| | | |
| **TOTAL ROAD BOND ISSUE REQUIREMENT** | **$** | **20,110,000** |

Notes:
(1) Assumes 100% funding of anticipated developer contribution items, where applicable.
(2) Based on developer advancing funds approximately two years prior to reimbursement.

A preliminary layout of roads proposed for funding has been provided, and they appear to benefit the proposed District and the land included within the proposed District. TCEQ's review of eligibility of costs may be determined in accordance with TCEQ rules in effect at the time bond applications are reviewed.

## D. ECONOMIC ANALYSIS

Land Use

The land use for the proposed District is intended to accommodate single-family residential development. Planned ultimate development in the proposed District, as shown in the land use plan provided in the engineering report, is as follows:



Justin P. Taack, Manager
Page 8
February 6, 2025

| Land Use | Acreage | ESFCs |
|---|---|---|
| Single Family/Residential | 286.90 | 1,336 |
| Amenity Center | 5.00 | 2 |
| Parks/Open Space | 71.44 | 0 |
| Floodplain | 38.20 | 0 |
| Wastewater Treatment Plant | 4.00 | 1 |
| **Total** | **405.54** | **1,339** |

## Market Study

A market study, prepared in August 2024 by Residential Strategies, Inc., was submitted in support of the creation of the proposed District. The proposed District is expected to include approximately 1,339 ESFCs on a tract totaling approximately 405.54 acres. The home values are expected to be approximately $435,000 to $525,000 for 50-foot lots and $485,000 to $575,000 for 60-foot lots. The study indicates single-family homes for that price range within the study's market area are expected to be absorbed at a rate of approximately 163 homes/year over the first five years.

## Project Financing

Per the engineering report, the projected taxable assessed valuation (AV) for the proposed District is as follows:

| Development Description | Lots | Developed Unit Value (per home per lot) | Total Buildout Value |
|---|---|---|---|
| 50-foot single-family lots | 999 | $ 480,000 | $ 479,520,000 |
| 60-foot single-family lots | 337 | $ 530,000 | $ 178,610,000 |
| | | **Total Assessed Valuation** | **$ 658,130,000** |

Considering the issuance of a total of $83,730,000 ($63,620,000 for utilities and $20,110,000 for roads) in bonds, assuming 100% financing, a bond coupon rate of 5%, and a 30-year bond life, the average annual debt service requirement would be $5,940,849 ($4,513,995 for utilities plus $1,426,854 for roads). Assuming a 98% collection rate and an ultimate AV of $658,130,000, a projected ultimate tax rate of approximately $0.92 ($0.70 for utilities and $0.22 for roads) per $100 AV was indicated to be necessary to meet the annual debt service requirements for the proposed District. An additional $0.05 per $100 AV is projected to be levied for maintenance and operating expenses, for a combined proposed District tax rate of $0.97.

Based on the information provided and assuming 100% financing, the total year 2024 overlapping tax rates on land within the proposed District are shown as follows:

| Taxing Jurisdiction | Tax Rates (Collin County) [1] |
|---|---|
| Seven Springs MUD (District) | $ 0.9711 [2][3] |
| Collin County | $ 0.1493 |
| Collin College | $ 0.0812 |
| Celina ISD | $ 1.2358 |
| **TOTAL TAX per $100 AV:** | **$ 2.4374** |



Notes:
1) Tax rate per $100 assessed valuation.

(2) Represents $0.70 for utilities, $0.22 for roads, and $0.05 for operation and maintenance tax.

(3) Assuming 100% funding of anticipated developer contribution items, where applicable.

Based on the proposed District tax rate and the year 2024 overlapping tax rate on land within the proposed District, and assuming 100% financing, the project is considered economically feasible.

Water and Wastewater Rates

According to information provided, Mustang SUD will provide retail water service and the proposed District will provide wastewater services to the proposed District's customers. The estimated monthly fee for 10,000 gallons of water and wastewater service would be $133.06.

Comparative Water District Tax Rates

A tax rate of $0.97 ($0.70 for utilities, $0.22 for roads, and $0.05 for operation and maintenance tax) for the proposed District is comparable to other districts in the target market area. Based on the requirements and intent of 30 TAC Section 293.59, this project is considered economically feasible. Each particular bond issue will be evaluated based on its own economic feasibility merits and the rules and regulations in place at the time prior to the issuance of any bonds by the proposed District.

E. **SPECIAL CONSIDERATION**

Request for Road Powers

A request for approval of road powers was included in the petition for creation of the proposed District. Pursuant to TWC Section 54.234, approval of road powers may be requested at the time of creation. The engineering report provided with the application included a summary of the estimated costs. The proposed roads appear to benefit the proposed District, and financing appears feasible.

F. **CONCLUSIONS**

1. Based on TCEQ policy, compliance with TCEQ rules, and review of the engineering report and supporting documents, the proposed District is considered feasible, practicable, a benefit to the land within the proposed District, and necessary as a means to finance utilities and to provide utility service to future customers.

2. Based on a review of the preliminary engineering report; market study; the proposed District's water, wastewater, drainage facilities, and road facilities; a combined projected tax rate of $0.97 per $100 AV when assuming 100% financing; the proposed District obtaining a 5% bond coupon rate; and other supporting data, the proposed District is considered feasible under the intent of the feasibility limits prescribed by 30 TAC Section 293.59.

3. The recommendations are made under authority delegated by the Executive Director of the TCEQ.

G. **RECOMMENDATIONS**

Grant the petition for creation of Seven Springs Municipal Utility District of Collin County.

2. Grant the District's request to acquire road powers in accordance with TWC Section 54.234 and 30 TAC Sections 293.11(d)(11), 293.201, and 293.202 subject to the requirement imposed by the TCEQ and the general laws of the state relating to the exercise of such powers.

3. The Order granting the petition should include the following statements:

   "This Order shall in no event be construed as an approval of any proposed agreements or of any particular items in any documents provided in support of the petition for creation, nor as a commitment or requirement of the TCEQ in the future to approve or disapprove any particular items or agreements in future applications submitted by the District for TCEQ consideration."

4. Appoint the following five persons to serve as temporary directors until permanent directors are elected and qualified:

| | | |
|---|---|---|
| Spencer Weber | Joey Tyner | Brittan Chrisman |
| Christina Adamson | Ryder Byrne | |

## H. ADDITIONAL INFORMATION

The Petitioner's professional representatives are:

Attorney: Mr. Ross Martin – Winstead, PC
Creation Engineer: Mr. Ken Heroy, P.E. – Jones-Heroy & Associates, Inc.
Market Analyst: Ms. Cassie Gibson – Residential Strategies, Inc.



# CITY OF ANNA, TEXAS

## RESOLUTION NO. 2024-9-1680

### RESOLUTION OF THE CITY OF ANNA, TEXAS CONSENTING TO THE CREATING OF POLITICAL SUBDIVISION IN THE EXTRATERRITORIAL JURISDICTION OF THE CITY OF ANNA, TEXAS

WHEREAS, GRBK Edgewood LLC, a Texas limited liability company ("Petitioner") has submitted to the Mayor and City Council of the City of Anna (the "City"), a Petition for Consent to Creation of Political Subdivision in the Extraterritorial Jurisdiction of the City of Anna, Texas; and

WHEREAS, said political subdivision (the "District") is proposed to be created and organized under the terms and provisions of Article XVI, Section 59 and Article III, Section 52 of the Texas Constitution and Chapters 49 and 54 of the Texas Water Code, as amended, together with all amendments and additions thereto; and

WHEREAS, the District is proposed to contain an area of approximately 405.654 acres of land, situated within Collin County, Texas, described by metes and bounds in Exhibit "A", which is attached hereto and made a part hereof for all purposes. The described property is partially located within the extraterritorial jurisdiction of the City of Anna, Texas; and

WHEREAS, attached to this Resolution as Exhibit "B" and made a part hereof are certain terms and conditions to such annexation as authorized by Sections 54.016(e) and 54.165, Texas Water Code, as amended, and Section 7929A.0305 of the Act; and

WHEREAS, the City Council desires to consent to the requested addition of land to the District;

**NOW, THEREFORE, BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF ANNA, TEXAS:**

1. That all of the matters and facts set out in the preambles hereof are true and correct and incorporated herein as if fully set forth herein.

2. That the City Council of the City of Anna, Texas hereby specifically gives its written consent, as provided by Chapter 54, Texas Water Code, and Section 7929A.0305 of the Act, to the addition of a certain area of land located within the proposed area of the District and within the extraterritorial jurisdiction of the City of Anna, Texas, subject to the terms and conditions attached hereto and incorporated herein as Exhibit "B".

3. That this resolution take effect immediately from and after its passage and is accordingly so resolved.

BE IT RESOLVED by the City Council of the City of Anna, Texas on the 24th day of September 2024.

APPROVED:

Pete Cain, Mayor

Carrie L. Land, City Secretary

Page 9185

## EXHIBIT A

### LEGAL DESCRIPTION OF THE DISTRICT

#### LEGAL DESCRIPTION (TRACT 1)
355.651 ACRES

BEING all of that certain tract of land situated in the Joseph Mitchum Survey, Abstract No. 590, the James R. Savage Survey, Abstract No. 845, and the Thomas Allen Survey, Abstract No. 12, Collin County, Texas, and being all of a called 355.559 acre tract of land, described as Tract One, in the deed to Celina Seven Springs, LP, recorded in Instrument No. 2022000089651, Official Public Records of Collin County, Texas, and being more particularly described as follows:

BEGINNING at a PK nail found at the Southeast corner of a called 22.43 acre tract of land, described in deed to Ara Estates, LLC, recorded in Instrument No. 2023000039859, said Official Public Records, and in the right of way limits of said County Road 175 (Variable Width right-of-way) and in the right of way limits of Lone Star Road (Variable Width right-of-way);

THENCE North 01° 32' 04" West, a distance of 1166.06 feet to a PK nail set in the right of way limits of Lone Star Road (Variable Width right-of-way);

THENCE North 89° 30' 58" East, passing a 1/2-inch iron rod found at a distance of 25.04 feet, with the south line of Lone Star Ranch South Phase 1, Lot 2, recorded in Cabinet 2021, Slide 129, Plat Records of Collin County, Texas, continuing with the south line of a called 5.00 acre tract of land, described in deed to Timothy E. Woodard and Kimberly A. Woodard, A married couple, recorded in Instrument No. 2023000021582, Official Public Records of Collin, County, Texas, continuing with the South line of a called 10.01 acre tract of land, described in deed to Darrell Ashmanskas and Min Luo, recorded in Document No. 20210609001162740, said Official public records, for a total distance of 1763.70 feet to a 5/8-iron rod found at the southeast corner of said Darrell Ashmanskas and Min Luo tract;

THENCE North 09° 43' 01" East, with the east line of said Darrell Ashmanskas and Min Luo tract, a distance of 730.21 feet to a 5/8-inch iron rod found at the Northeast corner of said Darrell Ashmanskas and Min Luo tract and at the common Southeast corner of Lone Star Ranch, Lot 10, Cabinet 2016 , Slide 869, Plat Records of Collin County, Texas;

THENCE North 09° 57' 39" East, with the east line of said Lone Star Ranch, Lot 10, passing Lot 10, Lot 9, Lot 8, and Lot 7, a distance of 1761.55 feet to a 5/8-inch iron rod found at the Northeast corner of said Lone Star Ranch, Lot 7 and the common Southeast corner of a called 67.95 acre tract of land, conveyed to Tony L Speck, according to Collin County Appraisal Website, (No Deed Information found),

THENCE North 09° 57' 32" East, with the east line of said 67.95 acre tract of land, a distance of 468.25 feet to a capped iron rod set;



Page 9186

THENCE North 89° 32' 50" East, a distance of 5.14 feet to a 1/2-inch iron rod found at the Southwest corner of a called 25.513 acre tract of land, described as Tract One, in deed to Michael Drue Franklin, recorded in Document No. 20160421000482270, said Official Public Records;

THENCE South 73° 57' 46" East, continuing with the south line of said 25.513 acre tract, a distance of 550.54 feet to a capped iron rod set;

THENCE South 73° 49' 57" East, continuing partially with the south line of said 25.513 acre tract and with the south line of a remainder of a called 101 acre tract of land, described in deed to Jimmy Don Vanhoozer, recorded in Volume 5914, Page 99, said Official Public Records, a distance of 924.80 feet to a capped iron rod set;

THENCE with the south line and partially with the east line of said called 101 acre tract of land, the following courses and distances:

1. South 02° 02' 14" East, a distance of 30.33 feet to a capped iron rod set;

2. North 73° 05' 43" East, a distance of 28.13 feet to a capped iron rod set;

3. South 68° 05' 06" East, a distance of 20.42 feet to a capped iron rod set;

4. South 34° 16' 16" East, a distance of 67.88 feet to a capped iron rod set;

5. North 67° 17' 25" East, a distance of 41.35 feet to a capped iron rod set;

6. South 70° 15' 27" East, a distance of 48.23 feet to a capped iron rod set;

7. South 81° 30' 43" East, a distance of 38.98 feet to a capped iron rod set;

8. North 01° 11' 38" East, a distance of 1713.70 feet to a capped iron rod set in the right of way limits of County Road 177 (Variable width right-of-way);

THENCE North 89° 45' 08" East, a distance of 362.52 feet to a 1/2-inch iron rod found;

THENCE North 88° 26' 22" East, a distance of 877.45 feet to a point for corner, from which a 1/2-inch iron rod found at the Northwest corner of a called 23.90 acre tract of land, described in deed to Kellie Sue Fierro, recorded in Volume 5378, Page 4922, bears North 70° 51' 26" West, a distance of 2.92 feet;



Page 9187

THENCE South 00° 04' 41" East, with the west line of said 23.90 acre tract, a distance of 619.56 feet to a capped iron rod set;

THENCE South 00° 04' 33" West, partially with the west line of said 23.90 acre tract and the west line of a called 3.000 acre tract, conveyed to Donald R. Hanson & Judith M. Hanson, according to Collin County Appraisal Website, (No Deed Information found), a distance of 637.02 feet to a 5/8-inch iron rod found;

THENCE South 00° 32' 49" East, with the west line of said 3.000 acre tract, a distance of 220.75 feet to a capped iron rod set;

THENCE South 09° 30' 21" East, partially with the west line of said 3.000 acre tract and the west line of a called 0.844 acre tract of land, described in deed to Judith M. Hanson, Trustee of the Judith M. Hanson Living Trust, recorded in Document No. 20120302000252180, said Official Public Records, a distance of 129.13 feet to a capped iron rod set;

THENCE North 85° 11' 02" East, with a southerly line of said 0.844 acre tract, a distance of 28.90 feet to a 1/2-inch iron rod found for a southerly corner of said 0.844 acre tract and the common northwest corner of a called 26.26 acre tract of land, described in deed to Daniel Duane Olsen and Christine Lynn Olsen, recorded in Document No. 20210708001379340, said Official Public Records;

THENCE South 00° 18' 59" East, with the west line of said 26.26 acre tract of land, a distance of 725.83 feet to a 1/2-inch iron rod found for the Southwest corner of said 26.26 acre tract and the common northwest corner of a called 13.13 acre tract of land, described in deed to Rebecca Sue Lester, Lois Jean Fletcher and Helen Elaine Defrance, recorded in Document No. 20190204000117710, said Official Public Records;

THENCE with the west line of said 13.13 acre tract of land, the following courses and distances:

1. South 01° 01' 33" East, a distance of 17.65 feet to a 1/2-inch iron rod found;

2. South 00° 47' 17" East, a distance of 121.33 feet to a capped iron rod set;

3. South 00° 00' 49" East, a distance of 318.18 feet to a 5/8-inch iron rod found for the southwest corner of said 13.13 acre tract of land and the common northwest corner of a 13.13 acre tract of land, described in deed to Rebecca Sue Lester, Lois Jean Fletcher and Helen Elaine Defrance, recorded in Document No. 20190204000117720, said Official Public Records;

THENCE South 00° 04' 01" East, with the west line of said 13.13 acre tract of land, a distance of 478.14 feet to a 1/2-inch iron rod found for the Southwest corner of said 13.13



Page 9188

acre tract of land and at the common northwest corner of a called 26.77 acre tract of land, described in deed to Kenneth W. Hendrix, recorded in Document No. 96-0019131, said Official Public Records;

THENCE with the west line of said 26.77 acre tract of land, the following courses and distances:

1.      South 01° 09' 25" East, a distance of 265.56 feet to a capped iron rod set;

2.      South 03° 19'45" East, a distance of 306.57 feet to a capped iron rod set for corner, same being a northerly corner of a called 75.69 acre tract of land, described in deed to Staley Revocable Trust, recorded in Document No. 2003-0138532, said Official Public Records;

THENCE with the north and west line of said 75.69 acre tract of land, the following courses and distances:

1.      South 89° 15' 52" West, a distance of 145.26 feet to a capped iron rod set;

2.      North 73° 10' 32" West, a distance of 526.08 feet to a capped iron rod set;

3.      South 06° 17' 09" West, a distance of 1623.59 feet to a 1/2-inch iron rod found for an internal corner in said 75.69 acre tract, within the right-of-way limits of Weston Ridge Trail (Variable width right-of-way);

THENCE South 89° 26' 40" West, partially with a northerly line of said 75.69 acre tract and with a northerly line of a called 16.00 acre tract of land, described in deed to David and Jennifer Golden, recorded in Document No. 1992-0056072, said Official Public Records, a distance of 965.79 feet to a 1/2-inch iron rod found;

THENCE South 09° 08' 45" West, with the north line of said 16.00 acre tract, a distance of 35.21 feet to a capped iron rod set;

THENCE North 89° 21' 47" West, partially with the north line of said 16.00 acre tract, a distance of 1906.05 feet to a point in the right-of-way limits of County Road 175 (Variable width right-of-way);

THENCE South 89° 31' 51" West, a distance of 1524.65 feet to the POINT OF BEGINNING and enclosing 355.651 acres (15,492,179 square feet) of land, more or less.

**LEGAL DESCRIPTION (TRACT 2)**
**50.003 ACRES**



BEING all of that certain tract of land situated in the Williams Warden Survey, Abstract No. 965, Collin County, Texas, and being all of a called 49.985 acre tract of land described as Tract Two, in the deed to Celina Seven Springs LP, recorded in Instrument No. 2022000089651, Official Public Records of Collin County, Texas, and being more particularly described as follows:

BEGINNING at a 5/8-inch iron rod found in the right-of-way limits of County Road 175 (Variable width right-of-way), at the southeast corner of said 49.985 acre tract and in the common north line of a called 75.83 acre tract of land described in the deed to The Lehner Family Revocable Trust, recorded in Document No. 20200928001659370, said Official Public Records;

THENCE South 89° 53' 56" West, with the south line of said 49.985 acre tract of land and the common north line of said 75.83 acre tract of land, a distance of 1401.31 feet to a 1/2-inch iron rod found at the Southeast corner of a called 42.945 acre tract of land, in deed to Carl C. Rasor and Wife, Angie A. Rasor, of the Rasor Living Trust, recorded in Instrument No. 20090031000368880, said Official Public Records;

THENCE North 00° 30' 34" West, partially with the east line of said 42.945 acre tract of land, a distance of 1554.31 feet to a 5/8-inch iron rod found at the Northwest corner of said 49.985 acre tract, in the south right of way line of County Road 175 (Variable Width right-of-way);

THENCE North 89° 53' 33" East, with the South right of way line of County Road 175 (Variable width right-of-way), a distance of 1401.96 feet to a 5/8-inch iron rod found at the Northeast corner of said 49.985 acre tract, in the right of way limits of County Road 175 (Variable width right-of-way), within the right-of-way limits of Weston Ridge Trail;

THENCE with the right-of-way limits of County Road 175 and the east line of said 49.985 acre tract, the following courses:

1.    South 00° 26' 48" East, a distance of 1079.16 feet to a 5/8-inch iron rod found;

2.    South 00° 34' 25" East, a distance of 475.37 feet to the POINT OF BEGINNING and enclosing 50.003 acres (2,178,118 square feet) of land, more or less.


DISTRICT COURT OF TRAVIS COUNTY TEXAS

## EXHIBIT B

(a) To the extent authorized by law, the District will issue bonds only for the purpose of purchasing and constructing, or purchasing, or constructing under contract with the City of Anna, or otherwise acquiring waterworks systems, sanitary sewer systems, storm sewer systems, drainage facilities, recreational facilities, road facilities, law enforcement facilities, fire-fighting facilities, emergency medical services or medical transport services facilities, and animal control facilities, or parts of such systems or facilities, and to make any and all necessary purchases, construction, improvements, extensions, additions, and repairs thereto, and to purchase or acquire all necessary land, right-of-way, easements, sites, equipment, buildings, plants, structures, and facilities therefor, and to operate and maintain same, and to sell water, sanitary sewer, and other services within or without the boundaries of the District. Such bonds will expressly provide that the District reserves the right to redeem the bonds on any interest payment date subsequent to the tenth (10th) anniversary of the date of issuance without premium and will be sold only after the taking of public bids therefor, and none of such bonds, other than refunding bonds, will be sold for less than 95% of par; provided that the net effective interest rate on bonds so sold, taking into account any discount or premium as well as the interest rate borne by such bonds, will not exceed two percent (2%) above the highest average interest rate reported by the Daily Bond Buyer in its weekly "20 Bond Index" during the one month period next preceding the date notice of the sale of such bonds is given, and that bids for the bonds will be received not more than forty-five (45) days after notice of sale of the bonds is given. The resolution authorizing the issuance of the District's bonds will contain a provision that any pledge of the revenues from the operation of the District's water and sewer and/or drainage system to the payment of the District's bonds will terminate when and if the City of Anna, Texas, annexes the District, takes over the assets of the District and assumes all of the obligations of the District. No additional land located within the extraterritorial jurisdiction of the City of Anna will be added or annexed to the District until the City of Anna has given its written consent by resolution or ordinance of the City Council to such addition or annexation.

(b)  (1) Before the commencement of any construction within the District, its directors, officers, or developers and landowners will submit to the Director of Public Works of the City of Anna, Texas or to his designated representative, all plans and specifications for the construction of water, sanitary sewer, drainage and road facilities, law enforcement facilities, fire-fighting facilities, emergency medical services or medical transport services facilities, and animal control facilities, and related improvements to serve the District and obtain the approval of such plans and specifications therefrom. All water wells, water meters, flushing valves, valves, pipes, hydrants, and appurtenances thereto, installed or used within the District, will conform exactly to the specifications of the City of Anna. All water service lines and sewer service lines, lift stations, sewage treatment facilities, and road facilities, and appurtenances thereto, installed or used within the District will comply with the City of Anna's standard plans and specifications as amended from time to time. Prior to the construction of any water, sanitary sewer, drainage or road facilities, law enforcement facilities, fire-fighting facilities, emergency medical services or medical transport services facilities, and animal control facilities within or by the District, the District or its engineer will give written notice by registered or certified mail to the Director of Public Works, stating the date that such construction will be commenced. The construction of the District's water, sanitary sewer, drainage and road facilities, law enforcement facilities, fire-fighting facilities, emergency medical services or medical transport services facilities, and animal control facilities-will be in accordance with the approved plans and specifications, and with applicable standards and specifications of the City of Anna; and during the progress of the construction and installation of such facilities, the Director of Public Works of the City of Anna, or an employee thereof, may make periodic on-the-ground inspections.

(2) Before the expenditure by the District of bond proceeds for the acquisition, construction or development of recreational facilities, the District shall obtain and maintain on file, from a registered landscape architect, registered professional engineer or a design professional allowed by law to engage in architecture, a certification that the recreational facilities, as constructed, conform to any applicable recreational facilities design standards and specifications of the City of Anna's Parks and Recreation

Exhibit B

Department and shall submit a copy of the certification and the "as built" plans and specifications for such recreational facilities to the Director of the City of Anna Parks and Recreation Department.

(3) Before the expenditure by the District of bond proceeds for the acquisition, construction or development of facilities for fire-fighting services, the District shall obtain and maintain on file, from a registered architect, registered professional engineer or a design professional allowed by law to engage in facility design and construction, a certification that the facilities for fire-fighting services, as constructed, conform to any applicable fire-fighting facilities design standards and specifications of the City of Anna's Fire Department and shall submit a copy of the certification and the "as built" plans and specifications for such facilities for firefighting services to the Chief of the City of Anna Fire Department.

(c) The District will agree to engage a sewage plant operator holding a valid certificate of competency issued under the direction of the Texas Commission on Environmental Quality, or such successor agency as the legislature may establish ("TCEQ"), as required by Section 26.0301, Texas Water Code, as may be amended from time to time. The District will agree to make periodic analyses of its discharge pursuant to the provisions of Order No. 69-1219-1 of the Texas Water Quality Board (predecessor agency to the TCEQ) and further to send copies of all such effluent data to the Department of Public Works, City of Anna, as well as to the TCEQ. The District will agree that representatives of the City of Anna may supervise the continued operations of the sewage treatment facility by making periodic inspections thereof.

(d) The District, its board of directors, officers, developers, and/or landowners will not permit the construction, or commit to any development within, the District that will result in a wastewater flow to the serving treatment facility which exceeds that facility's legally permitted average daily flow limitations or the District's allocated capacity therein.

(e) As required by Section 7929A.0104 of the Act, the District and the Petitioner agree to enter into a contract with the City for sewer treatment services and adequate supplemental police, fire, emergency, and animal control services for the District. Such contract shall be subject to review and approval by the Commissioners Court of Collin County in accordance with subsection 7929A.0104(c) of the Act but shall not be subject to voter approval as described in subsection 7929A.0104(b) of the Act. Said contract shall include a fire protection plan to meet the needs of the District and other portions of the service areas of the City and its extraterritorial jurisdiction. Said fire protection plan shall designate within the District a site suitable for fire protection, emergency medical services or medical transport services facilities, which site shall be donated to the City by the District regardless of whether a fire protection plan is finally approved. The City will agree to maintain any fire hydrants that are a part of the public water system serving the District and are conveyed to the City. The District agrees that there will be restrictive covenants (declarations of covenants, conditions, and restrictions applicable to land within the District, which will be enforced by a homeowners or property-owners association) and will require that any privately-owned fire hydrants, such as those located within commercial developments, including apartment complexes, that are located outside of a water and wastewater easement conveyed to the City will be owned, operated, and maintained by the owner of the property on which the hydrants are located. Said restrictive covenants will also require that commercial property owners perform maintenance of all privately-owned fire hydrants on their property in accordance with the City's maintenance recommendations applicable to City-owned fire hydrants. The City agrees to include a note on the construction plans for any commercial property within the District that identifies any fire hydrants on that property that will be owned and must be maintained by the property owner. The City will have no responsibility for maintenance of privately-owned hydrants, but may require the reservation of appropriate easements on all properties on which privately-owned fire hydrants will be located in order to allow the applicable fire service provider to access the fire hydrants for firefighting purposes.

The City and the Petitioner agree that it is in their mutual best interest and in the best interest of the public to provide adequate supplemental police, fire, emergency, and animal control services within the District as provided in this section. The District agrees, as part of its development process, to plan and construct facilities in close coordination with the City. As consideration for the City's agreement to provide

Exhibit B

supplemental police, fire, emergency, and animal control services within the District, the Petitioner agrees to pay to the City, on behalf of the District, the following sums: (i) within 30 days hereof, the sum of $200,000; (ii) on the second anniversary of the date hereof, the sum of $150,000; and (iii) at the time of each District bond sale out of which the Petitioner receives reimbursement, a sum equal to 3% of the of the reimbursement to the Petitioner approved under applicable TCEQ rules and payable to the Petitioner pursuant a report of reimbursable costs prepared by a certified professional accountant on behalf of the District at the time of the closing of each District bond issue (the "Public Safety Fee"); provided, however, that if the TCEQ approves the reimbursement of the payments made by the Petitioner under this section out of District bonds, then the Public Safety Fee will be increased to 4%.]

(f) Prior to the sale of any lot or parcel of land, the owner or the developer of the land included within the limits of the District will obtain the approval of the City Council of the City of Anna of a plat which will be duly recorded in the Real Property Records of Collin County, Texas, and otherwise comply with the rules and regulations of the Department of Planning & Development and the Department of Public Works of the City of Anna.



Exhibit B



Broken Spur Trl

Lone Star Rd

**Collin County**

Parcels

| | |
|---|---|
| Property ID | 2852956 |
| Address | 4858 WESTON RDG CELINA, TX 75009 |
| Appraised Value ($) | 20,267,142 |
| Year Built | 1996 |
| Appraisal District | Property Information |

Zoom to

Page 9194

**From:** Tracy Homfeld <thomfeld@co.collin.tx.us>
**Sent:** Tuesday, April 1, 2025 12:18 PM
**To:** Lauren Mecke <lmecke@annatexas.gov>; Dawn Redwine <dredwine@co.collin.tx.us>
**Cc:** Greg Peters <gpeters@annatexas.gov>; Wes Lawson <wlawson@annatexas.gov>; Michael Sullivan <msullivan2@co.collin.tx.us>
**Subject:** [EXTERNAL]: RE: [EXTERNAL]: FW: PLAT25-0320-0015 || Seven Springs Phase 1 Final Plat Application

**CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe. If you are still unsure, please report this email via the PhishNotify button.**

Lauren,

If the county deems that the removal petition was submittal per the state law (as we understand it), we have been instructed (by county administration and court) to officially remove them from the ETJ on our map.

I just wanted to let you all know.

I am double checking on this but I believe we will be officially removing them from your ETJ.

**Tracy Homfeld, PE, CFM**
Assistant Director

Collin County | Engineering
4690 Community Ave., Ste. 200 | McKinney, TX 75071
telephone  972.548.3733
thomfeld@co.collin.tx.us | www.collincountytx.gov

**From:** Lauren Mecke <lmecke@annatexas.gov>
**Sent:** Tuesday, April 1, 2025 11:50 AM
**To:** Tracy Homfeld <thomfeld@co.collin.tx.us>; Dawn Redwine <dredwine@co.collin.tx.us>
**Cc:** Greg Peters <gpeters@annatexas.gov>; Wes Lawson <wlawson@annatexas.gov>; Michael Sullivan <msullivan2@co.collin.tx.us>
**Subject:** RE: [EXTERNAL]: FW: PLAT25-0320-0015 || Seven Springs Phase 1 Final Plat Application

***** **WARNING:** External Email. Do not click links or open attachments that are unsafe. *****

Hello Tracy,

Per the attached letter from 2022, the City of Anna deferred all platting jurisdiction to Collin County for this development. Please let me know if you need an updated letter or if there were any additional parcels not included previously.

**Lauren Mecke**
Planning Manager
City of Anna, Texas
972-924-2616

Visit: **AnnaTexas.gov**. Like us on **Facebook**.

**From:** Tracy Homfeld <thomfeld@co.collin.tx.us>
**Sent:** Tuesday, April 1, 2025 10:17 AM
**To:** Wes Lawson <wlawson@annatexas.gov>
**Subject:** [EXTERNAL]: FW: PLAT25-0320-0015 || Seven Springs Phase 1 Final Plat Application

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe. If you are still unsure, please report this email via the PhishNotify button.

Hey Wes,
Do you know if the city officially approved the removal of the portion of this parcel from the Anna ETJ?

**Tracy Homfeld, PE, CFM**
Assistant Director

Collin County | Engineering
4690 Community Ave., Ste. 200 | McKinney, TX 75071
telephone  972.548.3733
thomfeld@co.collin.tx.us | www.collincountytx.gov

**From:** Dawn Redwine <dredwine@co.collin.tx.us>
**Sent:** Monday, March 24, 2025 10:11 AM
**To:** Tracy Homfeld <thomfeld@co.collin.tx.us>
**Cc:** Michael Sullivan <msullivan2@co.collin.tx.us>
**Subject:** FW: PLAT25-0320-0015 || Seven Springs Phase 1 Final Plat Application

Tracy can you confirm this is adequate for ETJ removal?  There has been so much talk about what we can accept, I want to make sure.

Dawn Redwine

Office Administrator

Collin County Engineering

dredwine@co.collin.tx.us

972-548-3727

**From:** Jamie Shelton <jshelton@lja.com>
**Sent:** Monday, March 24, 2025 10:01 AM
**To:** Dawn Redwine <dredwine@co.collin.tx.us>; Daniel Betten <dbetten@lja.com>; Michael Sullivan <msullivan2@co.collin.tx.us>; Tracy Homfeld <thomfeld@co.collin.tx.us>
**Cc:** Brian Hunnicutt <bhunnicutt@greenbrickpartners.com>; Philip Janco <phjanco@greenbrickpartners.com>; Courtney Harris <charris@lja.com>; Kevin Kessler <kkessler@lja.com>; 0394 - Seven Springs <NTX0394@lja.com>; Scott Eidman <seidman@greenbrickpartners.com>; Brad Williams <brad.williams@greenbrickpartners.com>; Bobby Samuel <bsamuel@greenbrickpartners.com>
**Subject:** RE: PLAT25-0320-0015 || Seven Springs Phase 1 Final Plat Application

***** **WARNING:** External Email. Do not click links or open attachments that are unsafe. *****

Dawn,

Attached are the letters from Winstead to the cities explaining the property was released by operation of law in June.

I have also attached the Creation Order from TCEQ, which has the memo from TCEQ Staff explaining that the TCEQ's position is that the property is not located within the ETJ of any city. Thanks!

**JAMIE SHELTON** | Senior Project Manager
Land Development
C: 860.543.5699
6060 N Central Expway, Suite 400
Dallas, TX
**EMPLOYEE-OWNED. CLIENT FOCUSED.**
**www.lja.com**
LinkedIn | Facebook | YouTube

**From:** Dawn Redwine <dredwine@co.collin.tx.us>
**Sent:** Monday, March 24, 2025 8:37 AM
**To:** Daniel Betten <dbetten@lja.com>; Michael Sullivan <msullivan2@co.collin.tx.us>; Tracy Homfeld <thomfeld@co.collin.tx.us>
**Cc:** Brian Hunnicutt <bhunnicutt@greenbrickpartners.com>; Philip Janco <phjanco@greenbrickpartners.com>; Jamie Shelton <jshelton@lja.com>; Courtney Harris <charris@lja.com>; Kevin Kessler <kkessler@lja.com>; 0394 - Seven Springs <NTX0394@lja.com>
**Subject:** RE: PLAT25-0320-0015 || Seven Springs Phase 1 Final Plat Application

**[EXTERNAL EMAIL]**

This parcel is showing to be partially in Weston and Anna ETJ. Do you have letters from the cities either removing the ETJ or deferring to the County for platting?

Dawn Redwine

Office Administrator

Collin County Engineering

dredwine@co.collin.tx.us

972-548-3727

---

**From:** Daniel Betten <dbetten@lja.com>
**Sent:** Thursday, March 20, 2025 2:01 PM
**To:** Michael Sullivan <msullivan2@co.collin.tx.us>; Dawn Redwine <dredwine@co.collin.tx.us>; Tracy Homfeld <thomfeld@co.collin.tx.us>
**Cc:** Brian Hunnicutt <bhunnicutt@greenbrickpartners.com>; Philip Janco <phjanco@greenbrickpartners.com>; Jamie Shelton <jshelton@lja.com>; Courtney Harris <charris@lja.com>; Kevin Kessler <kkessler@lja.com>; 0394 - Seven Springs <NTX0394@lja.com>
**Subject:** RE: PLAT25-0320-0015 || Seven Springs Phase 1 Final Plat Application

***** **WARNING:** External Email. Do not click links or open attachments that are unsafe. *****

Thank you for the information Mike! We will be on the lookout for any correspondence related to this final plat application.

Thank you,

**Daniel J. Betten, P.E.** | Project Manager
Land Development
O: 214.451.0872 | C: 214.457.9475
6060 N. Central Expressway, Suite 400, Dallas, TX 75206
**EMPLOYEE-OWNED. CLIENT FOCUSED.**
www.lja.com

---

**From:** Michael Sullivan <msullivan2@co.collin.tx.us>
**Sent:** Thursday, March 20, 2025 1:09 PM
**To:** Daniel Betten <dbetten@lja.com>; Dawn Redwine <dredwine@co.collin.tx.us>; Tracy Homfeld <thomfeld@co.collin.tx.us>
**Cc:** Brian Hunnicutt <bhunnicutt@greenbrickpartners.com>; Philip Janco <phjanco@greenbrickpartners.com>; Jamie Shelton <jshelton@lja.com>; Courtney Harris <charris@lja.com>; Kevin Kessler <kkessler@lja.com>; 0394 - Seven Springs <NTX0394@lja.com>
**Subject:** RE: PLAT25-0320-0015 || Seven Springs Phase 1 Final Plat Application

**[EXTERNAL EMAIL]**

Good afternoon Daniel. As soon as the application is processed, you will receive an invoice for the submittal. I will take this opportunity to inform you that we are utilizing a 3rd party for all reviews at this time. Those review fees will be passed along to the developer/owner. The application fee will be deducted from the initial review.

Thank you,

*Mike Sullivan, CFM*
*Environmental Construction Specialist*
*Collin County – Engineering*
office hrs. 7:30 – 4:00



*If you fail to plan, you plan to fail.*

**From:** Daniel Betten <dbetten@lja.com>
**Sent:** Thursday, March 20, 2025 8:51 AM
**To:** Michael Sullivan <msullivan2@co.collin.tx.us>; Dawn Redwine <dredwine@co.collin.tx.us>; Tracy Homfeld <thomfeld@co.collin.tx.us>
**Cc:** Brian Hunnicutt <bhunnicutt@greenbrickpartners.com>; Philip Janco <phjanco@greenbrickpartners.com>; Jamie Shelton <jshelton@lja.com>; Courtney Harris <charris@lja.com>; Kevin Kessler <kkessler@lja.com>; 0394 - Seven Springs <NTX0394@lja.com>
**Subject:** PLAT25-0320-0015 || Seven Springs Phase 1 Final Plat Application

***** WARNING:** External Email. Do not click links or open attachments that are unsafe. *****

Good Morning,

I wanted to notify you and your team that we have submitted a Final Plat application on the CSS portal this morning for our Seven Springs Phase 1 project. The assigned plan number is **PLAT25-0320-0015**. Can you please confirm you have everything you need from us to process this submission?

Additionally, please let us know when the application fee has been invoiced so we can make this payment in a timely manner. If there are any questions or comments, don't hesitate to reach out.

Thank you,

**Daniel J. Betten, P.E.** | Project Manager
Land Development
O: 214.451.0872 | C: 214.457.9475
6060 N. Central Expressway, Suite 400, Dallas, TX 75206
**EMPLOYEE-OWNED. CLIENT FOCUSED.**
www.lja.com

**[EXTERNAL EMAIL]** Exercise caution. Do not open attachments or click links from unknown senders or unexpected email

**[EXTERNAL EMAIL]** Exercise caution. Do not open attachments or click links from unknown senders or unexpected email

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Crystal Adams on behalf of David Overcash
Bar No. 24075516
cadams@wtmlaw.net
Envelope ID: 104451201
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Brief of Appellant - Intervenor Plaintiff City of Anna
Status as of 8/15/2025 4:19 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Allison Collins | 24127467 | Acollins@fosterswift.com | 8/15/2025 3:41:01 PM | SENT |
| Lena Chaisson-Munoz | | lena.munoz@brownsvilletx.gov | 8/15/2025 3:41:01 PM | SENT |
| Raymond Abarca | | Raymond.Abarca@oag.texas.gov | 8/15/2025 3:41:01 PM | SENT |
| Cole Wilson | | Cole.Wilson@oag.texas.gov | 8/15/2025 3:41:01 PM | SENT |
| Will S.Trevino | | will.trevino@brownsvilletx.gov | 8/15/2025 3:41:01 PM | SENT |
| Sherry Brown | | sherry@txmunicipallaw.com | 8/15/2025 3:41:01 PM | SENT |
| Andy Messer | | andy@txmunicipallaw.com | 8/15/2025 3:41:01 PM | SENT |
| Brad Bullock | | brad@txmunicipallaw.com | 8/15/2025 3:41:01 PM | SENT |
| Timothy Dunn | | Taddunn@txmunicipallaw.com | 8/15/2025 3:41:01 PM | SENT |
| Todd Disher | | todd@lehotskykeller.com | 8/15/2025 3:41:01 PM | SENT |
| William Thompson | | will@lkcfirm.com | 8/15/2025 3:41:01 PM | SENT |
| Cole Wilson | | cole.wilson@oag.texas.gov | 8/15/2025 3:41:01 PM | SENT |
| Guillermo Trevino | | will.trevino@brownsvilletx.gov | 8/15/2025 3:41:01 PM | SENT |
| Lena Chaisson-Munoz | | lena.munoz@brownsvilletx.gov | 8/15/2025 3:41:01 PM | SENT |
| George Hyde | | ghyde@txlocalgovlaw.com | 8/15/2025 3:41:01 PM | SENT |
| Matthew Weston | | mweston@txlocalgovlaw.com | 8/15/2025 3:41:01 PM | SENT |
| David Overcash | | david.overcash@wtmlaw.net | 8/15/2025 3:41:01 PM | SENT |
| Clark McCoy | | cmccoy@wtmlaw.net | 8/15/2025 3:41:01 PM | SENT |